JANVIER, Judge.
The plaintiff partnership and its members, Ernest A. and Edouard C. Carrere, are engaged in business in New Orleans as real estate agents. The partnership and the individual members brought this suit against Frank Rumore, praying for judgment for $1200.00, as a commission alleged to have been earned, and for $400.00, as an attorney’s fee, claiming that the plaintiffs obtained a purchaser for certain real estate owned by Rumore and that Rumore accepted the offer but that the contract was not consummated because Rumore was unable to deliver possession of the property, although at the time he accepted the offer, Rumore assured representatives of plaintiff “that he was able to deliver possession of the said premises at the date of act of sale * * *.”
Plaintiffs alleged that had the act of sale been passed the defendant could not have delivered possession at that time; therefore, defendant, the owner, and the prospective purchaser “entered into a compromise agreement with relation to the agreement to buy and sell, which agreement reserved all rights of all parties with reference to the brokerage commission; that said agreement was made for the reason that Mr. Rumore was unable to deliver possession of said property.”
Defendant filed exceptions of no cause of action and no right of action which were overruled. Defendant then filed answer in which he averred that the plaintiffs had acted as agent and attorney in fact for the prospective purchaser, Alfred J. Knapp, whose identity at that time was unknown to the defendant; that the said prospective purchaser had instructed the plaintiffs to purchase the property for him provided he could obtain possession “at date of sale,” and had executed a written offer conditioned upon delivery “at date of sale”; that at that time the property was occupied by tenants and that, therefore, though re *59 spondent executed an acceptance, not on the same document which had been signed by Knapp and which offer was not shown to him, his acceptance was made “subject to existing leases.”
Respondent averred that, since the offer to purchase was made conditioned upon immediate delivery, whereas the so-called acceptance was made subject to existing leases, there was no meeting of the minds and there was no contract and, consequently, no commission was earned.
After a trial on the merits, there was judgment dismissing the suit and plaintiffs have appealed.
The record shows that defendant, Ru-more, 'owned the property and that Knapp, desiring to purchase it, employed the plaintiffs to attempt to secure it. The plaintiffs then prepared a written offer which Knapp signed. This offer was on a printed form of the plaintiffs and as executed by Knapp it contained a stipulation reading as follows : “Possession will be given date of sale.”
The words “possession will be given” were printed and following them were the typewritten words “date of sale.” Following the space in which the words “date of' sale” were written, there were the printed words “subject to existing leases, viz.:”, but these words- — “subject to existing leases, viz.:” — were eliminated by the letter “x”, repeated many times on the typewriter.
The document containing the offer of Knapp was not submitted to Rumore, for acceptance but there was submitted to him another form, identical with that on which Knapp had made his offer except for the important fact that in the form submitted to Rumore for his signature, the words, “subject to existing leases, viz.:”, were not eliminated. The defendant, Rumore, signed the form signifying his acceptance.
We are told that it is customary in the real estate business for an agent to obtain an offer on one form and then, instead of having the acceptance executed on the same form, to prepare an identical document and to have the owner accept the offer on this other form. We are not told the reasons for this.
As a result of the following of this custom, it thus appears that the plaintiffs obtained from Knapp an offer conditioned upon delivery at date of sale and obtained from defendant an acceptance “subject to existing leases, Viz.
When the matter came to trial, counsel for plaintiffs called the defendant to the witness stand and when it became apparent that the purpose was to obtain evidence as to facts and discussions which antedated and led up to the execution of the two contracts, counsel for defendant objected, saying: “ * * * This suit is on a written contract entered into between the parties, and that any negotiations that they had before the signing of the instrument or after the signing of it are irrelevant and immaterial, and nothing he can say or anyone else can say could change the stipulations of that agreement, in the absence of an allegation of fraud, which is not present in this case.”
Counsel for the plaintiffs then explained that he wished to show that: “The words ‘subject to existing leases, viz.:’ followed •by three blank lines, ends up meaning the exact same thing as if all four of the words had been struck out. I also intend to introduce evidence that the parties to the contract were well aware of what was the intention of the vendor at the time he signed the contract.”
The objection was sustained and the evidence sought to be elicited -was not obtained.
Both .documents were offered in evidence and it was stipulated “that the act of sale was never passed for the reason that there were tenants in the premises who were still there at the time when purchaser wanted to take title.” And it was also stipulated that for that reason “the agreement to buy and sell was cancelled by mutual consent of the parties * * * with a reservation of everyone concerning any commission that might be due.”
When the matter was argued before us, counsel for plaintiffs stated that the only issue is whether there is any difference in meaning between the two documents. The contention is that there is no differ *60 ence, since, in the acceptance which was signed by defendant, the printed words— “subject to existing leases, viz.:” — are followed by blank spaces into which nothing was written, and that, in effect, therefore the document declares that there are no written leases.
Counsel for plaintiffs, in argument and in brief, discuss at length the meaning of the abbreviation or symbol, “Viz.”, and they say. that, according to all lexicographers and according to general usage, “viz.” means “to-wit” or “as follows” or “that is to say,” and it is argued that if, in a document which is printed, there is a general reference to existing leases and the reference is .followed by the symbol “viz.” which, in turn, is followed by blank spaces and nothing is written in the blank spaces, the meaning is that there are no written leases.
In the first place, it is admitted that there were written leases which prevented the transfer of the property, and, of course, the defendant, the owner of the property, must have known of these leases. And he also must have known .that if he sold the property and agreed to give immediate delivery and could not do so because of these leases, he might render himself liable to the prospective purchaser and to the agent also, and therefore it is more than doubtful whether he would have signed the document had there been eliminated therefrom the reference to the leases. Furthermore, we think it highly improbable, under the circumstances, that he would have gone to the length indicated by counsel and persuaded himself that the words, “subject to existing leases, viz.:”, did not mean anything since they were followed by blank spaces.
It is our belief that under such circumstances an owner reading those words and seeing the blank spaces following would assume that the reference ■to existing leases was sufficient to protect him and that there was no necessity to set forth a detailed description of the leases.
It is argued that if defendant had been permitted to testify he would have stated that though there were leases, he could have terminated them and was therefore willing to make his acceptance conditioned upon immediate delivery. There are two answers to this argument — first, whatever preliminary discussions there may have .been prior to the execution of the final document which was signed, it was specifically provided in that document that the acceptance was made subject to the leases and all of those preliminary discussions became crystalized in the final document which must be accepted as the final agreement.
 Secondly, the document was prepared by the plaintiffs themselves. Where there is a dispute over what its provisions are, or what its stipulations mean, a document must be.interpreted against those who have prepared it. Here, not only did plaintiffs prepare it, but it was on one of their printed forms.
We see no reason to comment at great length .on the two cases to which all counsel have referred: Johnson v. Shreveport Properties, Inc., 213 La. 485, 35 So.2d 25, 30, and Blythe v. Hall, 169 La. 1120, 126 So. 679.
Counsel for plaintiff correctly state that a binding written contract may result even though the offer and the acceptance are set forth in two different documents. There can be no doubt of this.
In Johnson v. Shreveport Properties, Inc., supra, appears the following:
“There is ho requirement that the acceptance of an offer be made in the same act. To the contrary this court has said:
“ ‘The circumstance that the acceptance was not by the same instrument is insignificant, since article 1804, Rev.Civ.Code, expressly provides that the acceptance need not be by the same act.’ Union Sawmill Co. v. Mitchell, 122 La. 900, 48 So. 317, 318.”
As sustaining the contention that even though there may be slight differences in the wording of the two documents, still *61 in certain situations a binding contract may-result, counsel for plaintiffs rely upon the Johnson case. That case is not authority for the proposition that there may be substantial differences in the two documents and that nevertheless a binding contract may result. There the Supreme Court held that as a result of several communications a binding offer to buy real estate had been accepted. In the document evidencing the acceptance, the suggestion was made that there were “alternative methods for transferring the property.” The Supreme Court held that these were merely suggestions and that there was nothing in them which precluded a transfer of title in the method contemplated by the offer, and that as a result of the acceptance “there came into being a complete obligation * * * to deliver title.”
More nearly analogous is the case of Blythe v. Hall, supra. There the agent for the owner of the property obtained an offer to purchase. This offer set forth the price and various conditions. The agent telegraphed the owner.that he had secured an offer of $4500.00 subject to the commission of the agent. The owner telegraphed back that she accepted the offer. When the owner learned of the conditions, — though they were substantially those which are usually present in such contracts — she refused to consummate the sale. The Supreme Court held that the owner was not bound since all of the terms had not been communicated to her and her acceptance obviously meant that she accepted the price provided all other conditions were acceptable.
The trouble in the case at bar no doubt came about because the agents or employees of the plaintiffs, although they eliminated the words, “subject to existing leases, viz.from the document containing the offer, failed to eliminate them from the other document which was presented to its owner. This error was made by employees of the plaintiffs and plaintiffs must bear the consequences.
The judgment appealed from is affirmed at the cost of appellants.
Affirmed.