115 So.2d 821

Hugh Wimberly LAWSON

v.

MARTIN TIMBER COMPANY.

No. 43098.

March 23, 1959.

On Rehearing Nov. 9, 1959.
Rehearing Denied Dec. 14, 1959.

Waltman & Napper, Ruston, Goff & Caskey, Arcadia, for defendant-appellant.

Robert H. Wimberly, Arcadia, for plaintiff-appellee.

PONDER, Justice.

In this suit the plaintiff is seeking to recover the value of timber cut and removed from his land. It appears from the allegation in the petition that the plaintiff is contending that the defendant was guilty of moral bad faith in the cutting and removing of timber, and, in the alternative, that the defendant is in legal bad faith in removing the timber, and, in the further alternative, that plaintiff is entitled to recover the value of the stumpage of logs cut and removed from the land. The plaintiff also seeks damages for the destruction of a fence on his property, and the amount expended for the employment of a cruiser to estimate the amount of timber cut and removed by the defendant, and also for legal interest from judicial demand until paid. The defendant opposed the suit on the ground that it was the owner of the timber at the time it was cut and removed by virtue of a timber deed executed by the plaintiff in favor of the defendant. Upon trial the lower court gave judgment in favor of the plaintiff for the stumpage value of the timber cut and removed by the defendant, and cast the defendant in damages for the sum of $240, with 5% per annum interest thereon from judicial demand until paid. The defendant has appealed and the plaintiff has answered the appeal asking for an increase in the award alleging that the defendant was guilty of moral bad faith, and, in the alternative, in legal bad faith. In his answer to the appeal, plaintiff asks for an increase in the award for damages to the fence and the cost of estimating the timber.

We find from the contract between the parties executed on October 14, 1948 that the defendant was to have two years to cut and remove the timber from plaintiff's land. In this contract it is provided: "in event of high water after this time, Martin Timber Co. is to get additional one years time."

The timber was cut and removed during the month of July, 1951. The sole question presented in this case resolves itself to the interpretation of this clause in the contract, viz.: "in event of high water after this time, Martin Timber Co. is to get additional one year's time."

The plaintiff takes the position that it was the intention of the parties that the defendant was to be granted an additional year if it was prevented from removing the timber during the two year period. In other words, he contends that there was sufficient time within this two year period for the removal of the timber without the interference of high water.

The defendant, on the other hand, contends that it was granted an additional one year to remove the timber in the event of high water at any time during the two year period.

Both parties concede that the provision granting an additional one year to remove the timber when it used the phrase "after this time" has reference to the date of the execution of the contract on October 14, 1948.

It appears that there was considerable high water on this land within the two year period of the contract. The evidence is somewhat conflicting as to whether or not the defendant was prevented from removing the timber within two years from the date of the contract on account of high water. But this is immaterial under the very wording contained in the contract granting defendant an additional year within which to remove the timber "in event of high water after this time." The language used in this provision of the contract is clear and unambiguous and we cannot go beyond it with the view of seeking the intention of the parties. If they had intended otherwise they should have so stated in their contract.

Whenever, a contract, or any provision therein, is plain and unambiguous it must be enforced as written and cannot be rewritten by this Court for the reason that it is our province to construe contracts according to their terms if the language used is clear and unambiguous. Article 1901 of the LSA–Civil Code; Moriarty v. Weiss, 196 La. 34, 198 So. 643; Texas Co. v. State Mineral Board, 216 La. 742, 44 So.2d 841; Stack v. DeSoto Properties, 221 La. 384, 59 So.2d 428; Succession of Jurisich, 224 La. 325, 69 So.2d 361.

Insofar as the damage to the fence is concerned, the representative of the defendant testified that he offered to repair the fence but the plaintiff informed him that it

was not necessary because he intended to remove it and erect a new fence. The plaintiff denies that he made any such offer. It would appear to us that when the representative of the defendant admits that he would repair the fence that, therefore, he recognized his liability for the damages caused by the destruction of the fence. The evidence is very conflicting as to the condition of the fence and the portion of the fence destroyed or injured by the logging operations. Such being the case, we would not be warranted in disturbing the judgment of the lower court insofar as it awarded the plaintiff $240 for the damage to the fence. Insofar as the cost expended by the plaintiff for the estimate of the timber cut is concerned, it must be denied in view of our holding herein.

For the reasons assigned, that part of the judgment awarding the plaintiff the stumpage value of the timber and the cost of estimating the timber is reversed and set aside; and the judgment is amended so as to allow the plaintiff judgment against the defendant in the sum of $240 with 5% per annum interest thereon from judicial demand until paid. All costs in this suit to be equally borne between the plaintiff and the defendant.

SIMON, Justice (dissenting).

I regret my inability to accept the findings of fact and the application of the law reached by the author of the majority opinion. In this suit plaintiff alleges that the defendant, over his protest, about the month of July, 1951, cut and removed timber from the plaintiff's land. He further alleges the moral bad faith of the defendant, and that as a consequence the defendant is liable to him for the converted value of the logs without allowances and deductions for the cost and expense of manufacturing same. In the alternative he contends that if the defendant was merely in legal bad faith that the plaintiff should recover judgment for the full manufactured value of the logs less the cost and expense of converting the same into the manufactured product; and in the further alternative, that should the defendant be neither in moral nor legal bad faith, then in that event the plaintiff should recover for the stumpage value of the logs so cut and removed from his land. He also seeks damages in the amount of $500 for the destruction of fences surrounding his property and also the amount of $30 expended by him for the payment of services of a timber cruiser employed to estimate the amount of the timber cut.

The defendant opposed the suit on the ground that it was the owner of the timber at the time it was cut and removed by virtue of a timber deed executed by plaintiff in its favor. It further alleges that it was to have two years from the date of the contract to cut and remove the timber, but that if at any time after the date of the contract high water prevented it from do-

ing so that it would have an additional one year; that during the years 1949 and 1950 the plaintiff's land was covered by an overflow of high water which prevented the removal of said timber; that though some of the timber was removed in the months of August, September and October of 1950 that operations had to be abandoned because of existing high water. It further alleges that under the provisions of the timber contract executed on October 14, 1948 that the rights granted therein were in full force and effect in July, 1951, and that consequently it was the owner of all timber standing and lying on the land with the corresponding right to cut and remove the same.

Upon these issues the suit went to trial. The district judge gave judgment in favor of the plaintiff for the stumpage value of the timber in the amount of $1,001.97; the sum of $240 for damages to the fences; and for the further sum of $30 for the cost of having the timber estimated.

The timber contract executed between the parties is dated October 14, 1948, and the pertinent provisions therein show that the defendant was to have two years to cut and remove the timber from plaintiff's land. Then follows the proviso: "And in event of high water after this time Martin Timber Company is to get additional one year's time." It appears from the record that the greater portion of the timber was cut and removed during the month of July, 1951,

or approximately eight months after the two-year period of the contract had expired.

It appears from the uncontradicted testimony of the plaintiff that he consented to a clause in the deed providing that if during the two years' term of the contract the defendant was unable to remove the timber from the land because of existing high water, that the defendant would have an additional year in which to do so. The words in the clause standing alone are meaningless. But when taken in context with the preceding language of the contract wherein it is stated that the defendant is given two years in which to cut and remove all of said timber, this clause can have but one objective meaning. Undoubtedly the words "after this time" conclusively mean from the date that the contract became effective, that is, October 14, 1948. It is manifest that, taking the clause as written with the language preceding, it can only mean that if there existed any overflow or high water during the period of two years which would have *prevented* the cutting and removal of this timber within the stated primary term, then the defendant enjoyed the right of so doing during the period of one additional year, that is, from October 14, 1950 to October 14, 1951. I am fully supported in this view wherein in defendant's answer under Article 12, it alleged: "Defendant shows that he, Floyd McCarty (defendant's agent), went to see plaintiff regarding the details

of the contract for the cutting and removing the timber off of the land and it was agreed by Lawson that Martin Timber Company was to have two years in which to cut and remove the timber, and if at any time after the date of the contract high water *prevented* them from cutting and removing the timber they were granted an additional one year's time; that according to this agreement the contract was prepared and presented to him for his signature * * *." (Italics mine.)

It also appears from the record that plaintiff in his testimony stated that it was mutually agreed that if the defendant was prevented by high water and was unable to remove the timber because of high water during the two-year term of the contract, that he wanted them "to have sufficient time to remove the timber." Hence it is evident that this was the intention of the parties and I am in full accord with this conclusion as reached by the trial judge.

However, the author of the majority opinion treats this evidence and the conclusions to be drawn therefrom as being immaterial, for the reason that the very wording of the clause granting defendant an additional year within which to remove the timber "in event of high water after this time" is clear and unambiguous, and we cannot go beyond it with the view of seeking the intention of the parties.

I am not in accord with this finding. The language of this clause, when taken in context with the language preceding means what it says, and the interpretation and construction to be drawn therefrom is not only within the purview of the words used but is the construction which was placed thereon by plaintiff in his testimony and the contents of defendant's answer given in that regard, supra.

Such timber contracts are most common in the timber areas of our State. These agreements contemplate that a certain fixed time is given the purchaser of timber to remove the same from the land, but when that is rendered impossible as a result of high water conditions or other unforeseen causes, then and in that event the timber purchaser is afforded a gratuitous period of time to enjoy the benefits of his contract. However, the period of high water, that is, whether high water covers an area of land for a week, a month or a year is incidental. The controlling factor is the prevention of exercising the rights granted. Hence, if an anticipated and existing cause prevents the fulfillment of the rights purchased, then it follows that the extended time becomes operative and in force. To say that high water at any time during the two-year period of the contract, whether it covers the land for a day, month or year, is sufficient to extend the contract for an additional one year, as the majority opinion would have it, violates the meaning and tenor of the language used therein and to which I cannot subscribe.

Therefore, the remaining question before us is, did the defendant have sufficient time during the two-year term of the timber contract to remove the timber from the plaintiff's land or was it prevented from so doing as a result of high water?

The record discloses that Black Lake is a source of the annual overflow in that particular area. There is in evidence, introduced by the defendant itself, the testimony of Ernest J. Taylor, the hydraulic engineer with the geological survey, wherein he testifies that the channel of Black Lake starts overflowing only when the gauge height measures 6.4 feet. I need not enter into a detailed review of his testimony, but the conclusions reached by him reflect that for the two-year period from October 14, 1948 through October 14, 1950 there was a total of 361 days, or approximately one-half of the two-year limit that the gauge level at Black Lake was far below the overflow point of 6.4 feet, and that the area of land surrounding said lake, including plaintiff's land, was dry and not under water during that period of time.

Furthermore, the question arises is how long did it actually take to remove the timber when it was actually removed: One Jack Crane, an expert timber man, testified that the timber could have been cut and removed from the land in its entirety within a period not exceeding three weeks, and that with a good operator would require only half of that time.

It also appears from the record that this timber contract was prepared by one Ellis Martin, the agent of defendant company. It is shown that plaintiff did not participate in its preparation. Hence, it is well recognized that an instrument is to be most strictly construed against the party who prepared it. St. Landry State Bank v. Meyers, 52 La.Ann. 1769, 28 So. 136. See also Ernest A. Carrere's Sons v. Rumore, La.App., 52 So.2d 57; Muse v. Metropolitan Life Insurance Company, 193 La. 605, 192 So. 72, 125 A.L.R. 1075, and Texas Company v. Crais, La.App., 155 So. 405.

I am unalterably led to conclude, as shown by the record, that the defendant company had a large amount of "short term timber contracts" and because of this dilemma postponed, with a tinge of procrastination, the cutting of plaintiff's timber; and that possibly when the two-year time limit was nearing its end and it was confronted with unseasonable weather, thus forcing it to take refuge under the additional one-year clause of the contract, a right which, under my appreciation of the facts and the law applicable, did not exist. This was not the fault of plaintiff.

I respectfully dissent.

On Rehearing

SIMON, Justice.

The plaintiff, Hugh Wimberly Lawson, brought suit against the defendant, Martin

Timber Company, to recover the value of timber removed by the defendant from the plaintiff's land. The plaintiff alleged in his petition that the defendant was guilty of moral bad faith in the cutting and removing of the timber from his land, and, accordingly, was liable to him for the converted value of the saw logs without allowances and deductions for the cost and expense of manufacturing the same; and, in the alternative, if the Court should find that the defendant was merely in legal bad faith, that the plaintiff should have judgment for the full manufactured value of the saw logs, less the cost and expense of converting the same into the manufactured product; and, in the further alternative, should the Court find that the defendant was neither in moral nor legal bad faith, then in that event the plaintiff should recover for the stumpage value of the logs cut and removed from his land. In addition the plaintiff also sought damages for the destruction of a fence on his land and for the employment of a cruiser to estimate the amount of timber cut and removed.

For answer the defendant contended that it was the owner of all the timber cut and removed by virtue of a timber deed executed by the plaintiff in its favor.

The lower court gave judgment in favor of the plaintiff for the stumpage value of the timber in the amount of $1,001.97, the sum of $240 for damages to the fences, and for the further sum of $30 for the cost of having the timber estimated with 5% per annum interest from date of judicial demand on all amounts assessed until paid.

The defendant then appealed to this Court and the plaintiff answered the appeal asking for an increase in the award alleging that the defendant was guilty of moral bad faith, and, in the alternative, in legal bad faith. The plaintiff also asked for an increase in the award for damages to the fence and the cost of estimating the timber.

We reversed and set aside that part of the judgment awarding the plaintiff the stumpage value of the timber as well as the cost of estimating it and we amended the judgment to allow the plaintiff judgment against the defendant in the sum of $240 with 5% per annum interest thereon from judicial demand until paid, and ordered all costs of the suit to be borne equally by the plaintiff and the defendant. The case is again before us on rehearing.

The timber contract of purchase executed between the parties is dated October 14, 1948, and the pertinent provisions therein show that the defendant was to have two years to cut and remove the timber from plaintiff's land. Then follows the proviso: "And in event of high water after this time Martin Timber Company is to get additional one year's time." It appears from the record that the greater portion of the timber was cut and removed during the month of July, 1951, or approximately eight months

after the two-year period of the contract had expired.

It appears from the uncontradicted testimony of the plaintiff that he consented to the clause in the deed providing that if during the two years' term of the contract the defendant was unable to remove the timber from the land because of existing high water, that the defendant would have an additional year in which to do so. The words in the clause standing alone are meaningless. But when taken in context with the preceding language of the contract wherein it is stated that the defendant is given two years in which to cut and remove all of said timber, this clause can have but one objective meaning. Undoubtedly the words "after this time" conclusively mean from the date that the contract became effective, that is, October 14, 1948, the date of its execution. It is manifest that, taking the clause as written with the language preceding, it can only mean that if there existed any overflow or high water during the period of two years which would have *prevented* the cutting and removal of this timber *within the stated primary term*, then the defendant enjoyed the right *of so doing* during the period of one additional year, that is, from October 14, 1950, to October 14, 1951. This view is fully supported by defendant's answer under Article 12 wherein it is alleged: "Defendant shows that he, Floyd McCarty (defendant's agent), went to see plaintiff re-

garding the details of the contract for the cutting and removing the timber off of the land and it was agreed by Lawson that Martin Timber Company was to have two years in which to cut and remove the timber, and if at any time after the date of the contract high water *prevented* them from cutting and removing the timber they were granted an additional one year's time; that according to this agreement the contract was prepared and presented to him for his signature * * *." (Italics ours.)

It also appears from the record that plaintiff in his testimony stated that it was mutually agreed that if the defendant was prevented by high water and was unable to remove the timber because of high water during the two-year term of the contract, that he wanted them "to have sufficient time to remove the timber." Hence it is evident that this was the intention of the parties. This was the conclusion reached by the trial judge.

In our original opinion we treated this evidence and the conclusions to be drawn therefrom as immaterial for the reason that the very wording of the clause granting defendant an additional year within which to remove the timber "in event of high water after this time" is clear and unambiguous, and we could not go beyond it with the view of seeking the intention of the parties.

Upon the reconsideration of this issue it is our opinion that the interpretation and

construction to be drawn from the language of this clause is not only within the purview of the words used but is the construction which was placed thereon by plaintiff in his testimony and the defendant in its answer given in that regard, supra.

Such timber contracts are most common in the timber areas of our State. These agreements contemplate that a certain fixed time is given the purchaser of timber to remove the same from the land, but when that is rendered impossible as a result of high water conditions or other unforeseen causes, then and in that event the timber purchaser is afforded a gratuitous period of time to enjoy the benefits of his contract. However, the period of high water, that is, whether high water covers an area of land for a week, a month or a year is incidental. The controlling factor *is the prevention of exercising the rights granted.* Hence, if an anticipated and probable cause prevents the fulfillment of the rights purchased, then it follows that the extended time becomes operative. To say that high water at any time during the two-year period of the contract, whether it covers the land for a day, month or year, is sufficient to extend the contract for an additional one year would do violence to the meaning and tenor of the language used therein.

█ Therefore, the remaining question before us is, did the defendant have sufficient time during the two-year term of the timber contract to remove the timber from the plaintiff's land or was it prevented from so doing as a result of high water?

The record discloses that Black Lake is a source of the annual overflow in that particular area. There is in evidence, introduced by the defendant itself, the testimony of Ernest J. Taylor, the hydraulic engineer with the geological survey, wherein he testified that the channel of Black Lake starts overflowing only when the gauge height measures 6.4 feet. We need not enter into a detailed analysis of his testimony, but the conclusions reached by him reflect that for the two-year period from October 14, 1948, through October 14, 1950, there was a total of 361 days, or approximately one-half of the two-year limit that the gauge level at Black Lake was far below the overflow point of 6.4 feet, and that the area of land surrounding said lake, including plaintiff's land, was dry and not under water during that period of time.

Furthermore, defendant concedes that there was sufficient time during 1949 in which it could have cut and removed the timber from plaintiff's land, a condition most conducive to timber operations.

The question arises is how long did it actually take to remove the timber when it was actually removed? One Jack Crane, an expert timber man, testified that the timber could have been cut and removed from the land in its entirety within a period not ex-

ceeding three weeks, and that with a good operator would require only half of that time. Furthermore, defendant admits that the actual cutting and removing of the timber in 1951 took no more than four weeks.

 It also appears from the record that this timber contract was prepared by one Ellis Martin, the agent of defendant company. It is shown that plaintiff did not participate in its preparation. Hence, it is well recognized that an instrument is to be most strictly construed against the party who prepared it: St. Landry State Bank v. Meyers, 52 La.Ann. 1769, 28 So. 136. See also Ernest A. Carrere's Sons v. Rumore, La.App., 52 So.2d 57; Muse v. Metropolitan Life Insurance Company, 193 La, 605, 192 So. 72, 125 A.L.R. 1075; and Texas Company v. Crais, La.App., 155 So. 405.

We are unalterably led to conclude, as shown by the record, that the defendant company had a large amount of "short term timber contracts" and because of this dilemma postponed, with a tinge of procrastination, the cutting of plaintiff's timber and that possibly when the two-year time limit was nearing its end, it was confronted with unseasonable weather, thus forcing it to take refuge under the additional one-year clause of the contract, a right which, under the facts and the law applicable, did not exist.

These actions of defendant were not the fault of plaintiff.

For the reasons assigned, it is ordered that the former judgment of this Court be reversed, annulled and set aside; and it is further ordered that the judgment of the district court be reinstated and made the judgment of this Court, defendant to pay all costs of this suit.