CHASEZ, Judge.
Milton P. Miller, Jr., doing business as Town and Country Real Estate brought suit against James Riley claiming realtor’s commissions in the amount of $1,082.27 and attorney’s fees in the amount of $500.00, alleging that said defendant breached an agreement to purchase.
The defendant, Riley, answered, denying that he breached the contract and specially pleaded as a defense a release from the obligation, and estoppel based on the release. After trial on the merits, the district court rendered judgment in favor of defendant dismissing plaintiff’s suit at his cost; and after plaintiff’s motion for a new trial was denied, the appeal was-taken.
The record discloses that defendant, James Riley, a warrant officer in the United States Army, was assigned to Camp LeRoy Johnson, and arrived in New Orleans with his family on June 13, 1960. On July 8, 1960, the defendant, while attempting to find a home for his family, drove past the *854 premises No. 2541 Minnesota Avenue, Westgage Subdivision, Metairie, Louisiana, and upon seeing a Town and Country Real Estate “FOR SALE” sign on it, promptly telephoned the realty company and asked to see the property. Approximately a half hour thereafter, Milton P. Miller, sole owner of the realty company, appeared and showed defendant and his family through the house. After looking the premises over, Riley asked Miller what the square footage was and Miller replied that it was 1200 square feet. All of the parties immediately proceeded to the plaintiff’s office where the defendant, Riley, signed an offer to purchase the property on one of the realty company’s forms. The owner of the property, a Mr. Evers, promptly accepted the offer of the defendant. This agreement, in part, reads as follows:
“ * * * Rent to be prorated against note ‘till Act of Sale for the total sum of $18,037.90 with a cash down payment of $2,850.00 conditioned upon assuming a 4y% loan of G.I. $15,187.90 over a period of years of Bal. of Years — Act of Sale to be passed on July 22, ’60. Upon acceptance, purchaser will immediately deposit with agent note due 6/11/60 $1,000.— * * *»
The contract also provided:
“ * * * In event purchaser fails to comply with this agreement within time specified, the seller shall have the right to declare the deposit, ipso facto, forfeited, without formality beyond tender of title to purchaser; or seller may demand specific performance. * * * In the event the deposit is forfeited, the commission shall be paid out of this deposit, reserving to the seller the right to proceed against the purchaser for the recovery of the amount of the commission. If this offer is accepted, seller agrees to pay the agent a commission of 6% of the selling price, which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan(s)« if any, has been secured. Either party hereto who fails to comply with the terms of this offer, if accepted, or who-fails to cooperate with' Town and Country Real Estate Co. in securing the-mortgage loan, is obligated and agrees-to pay the agent’s commission and alb fees and costs incurred in enforcing-collection and damages. * * * ”
On that same date defendant executed a-, demand note to his own order in the amount of $1,000.00, which note bore the notation-“For Deposit on 2541 Minnesota Ave. Due July 11, 1960.” This note was not endorsed.
After signing the contract, defendant testified that he became apprehensive of the-size of the house, so he went back, measured the premises, and found that the house was approximately 1,000 square feet. After discussing the matter with his family, and; deciding that he couldn’t fit his furniture-into the house, he called plaintiff on July 11,. and endeavored to get out of the deal, but was told by plaintiff that he was bound by-the note and agreement to purchase stating, according to defendant’s testimony, “You’re-on the hook. If I can’t get another buyer you are stuck. I have your note and contract. The only thing if we don’t find another buyer, you are stuck.”
The record shows that on July 12, I960,, plaintiff received an offer from a Mr. Pick-etts to purchase the same property, which-offer was accepted by the owner, Mr. Evers, who on the advice of counsel instructed plaintiff to get a release from defendant and sell the property to Picketts.
The following instrument, admittedly in plaintiff’s handwriting, was executed by-plaintiff and signed by defendant on July-19, 1960:
“This is to release myself of any obligations to the owner of 2541 Minnesota Street, Kenner, La. in reference to-his or my agreement to purchase said property.”
*855 Plaintiff also wrote on the back of this release — “Roland—Notarize this and give it to Evers (Minnesota deal)”
The property was sold to Mr. Picketts on July 20, 1960.
Under the agreement to purchase executed by defendant on July 8, 1960, the act of sale was to be passed on July 22, 1960.
Defendant contends that he did not breach the contract to purchase and as a consequence of this release, he is not obligated to plaintiff for a commission.
Defendant testified that he went to see ■plaintiff after he was told that plaintiff’s associate, a Mr. Schlayer had a buyer for the house and that plaintiff needed a release from defendant before he could sell the property; that plaintiff told him the release “got him off with the owner” that by the release defendant understood he had no further connection with the Minnesota Street property including realtor’s fees; •that plaintiff never talked to him about his owing realtor’s fees on the house at the time of signing the release; that plaintiff never made a demand for payment on the note; that he would not have signed the release had he realized he still would be liable for realtor’s fees, but would have purchased the house; that he was never requested to do any act in connection with the ■sale to Picketts, though he subsequently learned of the sale; that no tender of title was ever made. The best summary of his attitude about the release is the following •discourse:
“Q. When you came to Mr. Miller’s office and he wrote out this release and you signed it, what was he giving you for your having signed the release ? What was the consideration, so to speak, for you having come out and signed the release.
“A. Getting me off the hook.
'“Q. What was your understanding? Was it your understanding that you would be released, you would be released from everything.
“A. Yes. That I would be released from everything.”
The owner’s attorney, William E. Crawford, testified that at the passing of the act of sale to Picketts, he inquired about the release and about plaintiff who was not present, and that plaintiff’s associate, Mr. Schlayer, produced the release. The witness was primarily interested in his client’s not having to pay double realtor’s commissions. Although the release was not artfully drawn, he concluded from the circumstances leading up to the release that his client was not liable for double fees, and that Riley was “already out of the picture,” and “the clear purpose of the release was to dissolve the Riley contract.”
The trial judge assigned no written reasons for judgment, but at the close of the trial, made the following observation:
“It is inconceivable how now this man can be held on a commission he never defaulted on. Certainly he said, ‘I don’t want it.’ The seller says, ‘Look I want you to take title. I demand you take title.’ The seller never did that. The buyer under the contract, Mr. Riley, was let out. In the court’s opinion the commission is predicated on this being carried out.”
By rendering judgment for defendant, the trial judge held that since defendant had been sent for to sign a release, without which release the agent and the owner could not have sold the property with clear title to Picketts, defendant was released from everything regarding the property including realtor’s fees.
 When the seller of the property, with the knowledge, concurrence and assistance of his agent, granted Riley a release of the contract, the agent cannot look to Riley, the purchaser, for a commission. In Corpus Juris Secundum’s § 87 *856 under the heading of “Brokers” appears the following:
“§ 87 — Modification or Cancellation of Contract concluded by Principal.
“After a contract between the principal and a customer produced by the broker has been concluded, its subsequent modification or cancellation does not defeat or affect the right of the broker to a commission, unless it is done at his request or with his consent or knowledge and acquiescense.”
 Though the above rule is sufficient to dispose of this case the court is of the opinion that the release in and of itself is sufficient to release Riley from the claim made against him in this lawsuit. Granting that the written release was poorly drawn, it still effects the release of defendant, Riley, from all of his obligations under the contract, including the commission. The release was drafted and written out in longhand by Milton Miller, the plaintiff in this suit. When viewed in the circumstances under which it was written, i. e., that defendant was called in by Miller to sign the release in order to get out of the contract and to sell the property to Picketts, and in order to let the purchaser get out of the contract, and that Miller told him that this release would “get him off the hook,” the release should be construed to be a release from all of Riley’s obligations under the contract, including a possible liability for realtor’s fees. It is a well established rule of law that an ambiguous instrument should be construed against the party drafting it. See, for example, Lawson v. Martin Timber Company, 238 La. 467, 115 So.2d 821; King v. Mason, La.App., 95 So.2d 705, aff’d. 234 La. 299, 99 So.2d 117; Succession of Cormier, La.App., 80 So.2d 571 ; Ernest A. Carrere’s Sons v. Rumore, 52 So.2d 57 and many others.
In any event, Milton Miller, Jr., is estopped from claiming that the release is ineffective as to him.
The fact that plaintiff, Miller, told Riley that the release would get him off the hook; that Miller prepared the release himself, calling it a release, and requested Riley to sign it, which he did; that Riley would not have signed the release if Riley had thought that he would be required to pay $1,082.27 to Miller, yet not obtaining a home; and that Riley would not have signed the release, altering his position but would have instead have gone through with the sale for only the total cash outlay of $2,800.00 and then either used the house himself or resold it, clearly shows that plaintiff is estopped from claiming that the release affected part of the contract but not all of it.
Plaintiff contends that the deposit called for by the contract was not made and claims that for that reason the agent is entitled to his fees. First, the contract called for the deposit of a note due July 11, 1960, in the amount of $1,000.00. That deposit was made. In the case relied upon by appellant, a cash deposit was called for and was never made. Further any complaints that the agent might have that cash was not substituted for the note should be considered waived by the agent; in any event, the agent is estopped in his claim because of the release.
We hold that plaintiff’s release effectively freed defendant of any obligations under the agreement to purchase, including the payment of realtor’s commission.
For the reasons assigned, the judgment of the district court dismissing plaintiff’s suit at his cost is affirmed. All costs of this appeal shall be borne by plaintiff, Milton P. Miller, Jr.
Affirmed