TATE, Judge.
The plaintiff, Southern Fleet, rented a large truck-trailer to the defendant Venable. The trailer was destroyed by fire. Southern Fleet sues to recover for the value of the unit. (Under the terms of the lease contract, Venable was responsible for loss or damage to the unit.)
Southern Fleet appeals from the trial court’s denial of full recovery.
The principal issue is: Did Southern Fleet, the lessor, have the duty to provide insurance against the fire loss, under the terms of the lease contract or of any oral modification thereof?
Southern Fleet contends that it had the right, but not the duty, to secure insurance coverage. It further contends that parol *513 evidence and an admission by Venable proves that, despite any contrary lease agreement, the parties had orally agreed for Venable to continue prior insurance he had obtained on the truck by virtue of a prior lease.[1]
Under the lease contract, the most reasonable construction of the insurance clause is that the lessor, Southern Fleet, was obliged to provide the insurance, since the expense of such was included in the rentals to be paid by the lessee, Venable.[2] Furthermore, any ambiguity in this regard is to be construed against Southern Fleet, which had prepared the printed lease form executed by it and Venable. Civil Code Articles 1957, 1959; Lawson v. Martin Timber Co., 238 La. 467, 115 So.2d 821; Simmons v. American Nat. Ins. Co., La.App. 3d Cir., 199 So.2d 421.
Southern Fleet additionally contends, however, that the parties had orally modified this agreement at the time the lease was executed. Southern Fleet argues that Venable admitted and that the evidence proves that the parties intended for Venable to continue prior insurance he had obtained on the truck. Therefore, it is urged, any failure in this regard should not excuse Venable from paying for the loss of the leased truck.
Venable did not object to testimony elicited in an attempt to prove this oral modification. Most favorably to the appellant, we will assume that therefore a reviewing court cannot reverse because of the trial court’s consideration of such evidence, even though the parol testimony contradicted or varied the terms of the written instrument and even though no fraud or error is alleged.
See: White v. Lockhart, La.App. 1st Cir., 129 So.2d 917, and In re Industrial Homestead Ass’n, La.App.Orl., 198 So. 528 (both, however, overruled in Little v. Haik, 246 La. 121, 163 So.2d 558, at least insofar as applying to contracts creating title to immovable property). Contra: Clark’s Executors v. Farrar, 3 Mart.(O.S.) 247. See general rule, also contra: McCormick on Evidence, Section 213, footnote 2 (1954); 4 C.J.S. Appeal & Error § 290a, text at footnotes 65-67 ; 32A C.J.S. Evidence § 863; 88 C.J.S. Trial § 154.
Nevertheless, when we do consider such parol evidence, it does not preponderantly prove that the parties intended to vary the contractual provision, by which Southern Fleet was obligated to provide the fire insurance on the leased trailer.
Southern Fleet’s manager testified that, when the lease was executed, it was understood that Venable would continue his prior insurance. He pointed out that the lease indicated no monthly figure except the rental. He stated that the insurance premium would have been identified and added to the rental as an additional charge in an “Other” column of the printed lease, if Southern Fleet was to pay it.
Venable himself testified that the manager had called Venable’s insurance agent on the occasion of the lease-execution to make appropriate arrangements for the policy coverage. (The insurance agent did not remember this call.) Venable testified *514 that it was to be Southern Fleet’s responsibility to secure the insurance.
Nevertheless, under cross-examination, Venable did state that he himself was to pay the cost of the insurance, and that he did not expect Southern Fleet to pay for the insurance and then bill him. Tr. 10. This, of course, tends to corroborate Southern Fleet’s claim.
However, this testimony of Venable could also be understood to mean, in the light of the lease agreement (and considering the general inarticulateness of Venable’s testimony), only that he was to pay for the insurance because its cost was already included in the rental payments he was to make. See paragraph 12 of lease, quoted in footnote 2 above. Likewise, this unambiguous lease provision that the insurance premiums were to be included in the lease “rental” also can be considered as explaining why the lease contained no other specification of the insurance premium charges.
The testimony of Southern Fleet’s manager and the contrary testimony of Venable are fairly evenly balanced, as are corroborating and contradicting circumstances. For instance, the monthly rental charge is shown to be $150.50 over the 24 months of the lease, totalling $3612. Both witnesses agree that Venable was to pay'$3000 for the truck over the period; neither explains what the $612 surplus represented, whether time-charges, insurance premiums, or what.
Again, Southern Fleet had received a copy of Venable’s prior insurance coverage, which contained a 150-mile limitation on the use of the leased unit. (There was no coverage for this fire because it occurred when the truck was beyond this radius.) Southern Fleet’s manager admitted that such limited coverage would have been unacceptable to it, since the trailer-unit was to be used especially for long-haul operations. Nevertheless, the manager testified, he had not himself secured suitable insurance on the truck, because of an understanding that Venable’s prior coverage would be continued instead of Southern Fleet securing it and including the premium charges in the rentals (as the lease indicated would be done, see footnote 2).
Actually, the testimony of Southern Fleet’s manager does not explicitly testify to any specific agreement by Venable to furnish and pay for the insurance. Rather, he appears to have assumed that Venable would continue and pay for his prior coverage. This might explain why he did not ascertain insurance costs and include them as “other” charges in the lease (if, indeed, they are not already included in the rental charges).
In summary, Southern Fleet has not proved by a preponderance of the parol evidence that the parties entered into an agreement for Venable to take out and pay for suitable insurance, in contradiction to the terms of the written contract entered into at the same time.
Southern Fleet was obligated to provide for fire insurance under the terms of the lease.[3] Southern Fleet failed to secure this coverage, which would have protected itself and Venable against the loss by fire of the truck. The trial court therefore properly denied it full recovery for this fire-damage to its property sustained while leased to Venable.
For the reasons assigned, we affirm the trial court’s denial of recovery, at the cost of the plaintiff-appellant.
Affirmed.

. Under the prior lease, unlike the lease of May 5, 1966 (P — 4) during which the present loss occurred, Venable had been obliged to obtain the insurance on the leased unit.

. Paragraph 12 of the lease pertinently provides : “INSURANCE (a) Lessee authorizes Lessor to provide at Lessee’s expense, (which expense is included in the rental in the LEASE SCHEDULE) and to maintain in full force and effect with responsible insurance companies until this lease is terminated the following insurance : (1) Public Liability and property damage insurance * * * (2) Insurance against the hazards of fire and theft and other hazards insured under comprehensive or combined additional coverage insurance, and against the hazard of collision or upset, with a $100 deductible clause; this policy shall contain a loss-payable clause in favor of the mortgagee.” (Italics ours.)

. This insurance was to contain a $100 deductible clause. The trial court therefore allowed Southern Fleet to recover $100 from Venable, which was the amount he would have had to pay had Southern Fleet performed its lease obligation of securing adequate insurance.