BLANCHE, Judge.
This appeal arises out of a suit instituted by plaintiff against defendant to recover damages allegedly sustained by plaintiff as a result of the improper performance by defendant of home improvements and *165 remodeling.[1] Judgment was rendered in favor of plaintiff and against defendant in the principal sum of $1,700. From this judgment defendant suspensively appealed, assigning several specifications of error. Plaintiff timely answered the appeal, seeking an increase in the award of damages.
The trial judge handed down Written Reasons for Judgment summarizing his findings of fact and conclusions drawn therefrom as follows:
“Plaintiff has brought a suit for damages against Parish Lumber Home Improvement, Inc. contending that the defendant constructed certain additions and improvements to the plaintiff’s residence in an unworkmanlike manner resulting in serious defects and thereby breaching their contractual agreement. It is admitted by the defendant that it entered into a contract with the plaintiff on January 29, 1969 to construct certain additions to plaintiff’s home at 6873 LaSalle Avenue for the sum of $7,000.00. The defendant, however, avers that the additions were constructed in a good and workmanlike manner free from any vices or defects and in accordance with the terms of the contract. A determination of the issues presented by the law suit require an inquiry into the contract entered into between the parties. It stipulates, inter alia:
‘Build additions as per plan and following specifications. Build addition to kitchen, 12x18. Porch, 15x22, and addition to bedroom, 8 x 15. Kitchen and bath additions to match house in foundation and framing and exterior finish. Porch to have concrete floor with polyethylene vapor barrier. Framed for screen with heart redwood. Brick on house and addition sides to height of 4 feet in porch area. All additions unfinished on inside but complete on outside with exception of paint. Plumbing to be roughed in only and a sewer run two feet in cast iron from under the house. Install two new windows in the front and frame for a hall and a closet in the present living room. No electric, plumbing finish or painting included. Level rear section of den floor. $7,000.00; $2,000.00 cash, $5,000.00 FHA Title One Loan.’
“The plaintiff has enumerated four specific complaints in his petition, these being:
“(a) The additions to the rear of the kitchen are not level with the adjoining portions of the house.
“(b) The concrete slab floor of the rear porch is not level.
“(c) The roof line on the outside of the kitchen and dining room walls are uneven and do not match; and,
“(d) The rear section of the den floor is not level.
“In addition to these specific complaints, the plaintiff and his wife related their disapproval concerning other features of defendant’s work. Principal among these were: the ceiling in the den was not level with the remainder of the house; the brick wall between the den and the porch is pitted and improperly finished; weak spot in flooring in doorway between den and kitchen; a dip in corner of porch slab which collects water; and tar dripping from the roof of the porch to the slab below.
“During the trial the court went out and personally inspected the plaintiff’s residence and observed those areas about which there is controversy. It is the *166 court’s opinion that most of the plaintiff’s complaints are not of any major consequence, but stem from their dissatisfaction with the defendant’s failure to remedy the outstanding faults in the floor of the den and kitchen in plaintiff’s house.
“The defendant acknowledges that there is a ‘hump’ in the den floor but contends that this was not its responsibility under the contract and that it was only obligated to see that the floor of the new addition was level. Its position is similar in this respect regarding the situation in the kitchen floor. As evidenced by the contract which was signed by both Mr. and Mrs. Berge-ron, Parish was only obligated to ‘level rear section of den floor’ and, if strictly interpreted, their responsibility was limited. Parish certainly was not required to level the floors of the entire house about which it appears there was considerable irregularity. Nonetheless, it is this court’s opinion that based upon the testimony of the craftsman and upon its own inspection that Parish should have done a better job in joining the old section and new sections together so that the difference in levels would be less noticeable. Parish must have considered that they had some professional obligation in this regard, because a limited effort was made to rectify the problem.
“In the opinion of the court the same situation prevails in the kitchen, but to a lesser degree. There is an obvious slope that prevails in the new section of the kitchen. Plaintiff’s witnesses stated that this was merely an optical illusion and that their surveys show that the new section is perfectly level. Nonetheless, the court believes that corrective measures are required to correct this defect. The defendant’s own expert admitted that the ‘weak spot’ in the kitchen was due to poor workmanship and should be corrected.
“The only other defect observed by the court which was of any significance and which was due to poor workmanship is a dip in the concrete surface of the porch. This was obviously collecting water and a pool of water was noted to be standing at this point when the inspection was made. It is true that there is a small irregularity at a point where the old and new roof lines were joined together, but the testimony indicates no attendant structural weakness and there is no obvious deformity requiring corrective measures. Plaintiff’s complaints about the character of the brick work on the porch is not warranted in the court’s opinion. Neither is there any substantial justification for his complaint about the tar drip on the porch. It must be noted that no ceiling has been erected on the porch and if this were done the problem would no doubt disappear.
“In general the plaintiff received what he bargained for under his contract, but he does have cause for complaint against the contractor in some areas in which the contractor had basic responsibility. It would be impossible for the court to itemize the cost of remedying those defects for which the contractor is liable; however, using the testimony of Fred Griggs, general contractor, as a yardstick, it appears that the sum of $1,700.00 would be adequate to compensate the plaintiff as damages for the defendant’s failure to complete the job in a good workmanlike manner.” (Written Reasons for Judgment, Record, pp. 21-24)
Defendant assigns as its first specification of error the awarding by the trial court of damages to plaintiff for alleged items of construction which defendant was not obligated to perform according to the contract between plaintiff and defendant, such as leveling old sections of the house so that the difference between the old unleveled sections and the level new sections would be less noticeable or constructing the new section unlevel so as to more closely match the unlevel old section. This specification of error is without merit. There is ample evidence in the record to support the trial judge’s finding and holding that defendant “should have done a better job in joining the old section and new sections together so that the dif *167 ference in levels would be less noticeable.” (Written Reasons for Judgment, Record, pp. 22, 23) The trial judge was clearly justified in accepting the testimony of the expert contractor, Fred Griggs (Record, pp. 99, 105), as well as the other evidence in corroboration thereof to the effect that the workmanship by defendant was not within the reasonably acceptable limits of tolerance as far as approximation and join-der of the new construction with the existing construction and insofar as levelness was concerned. The trial judge’s personal inspection of the premises corroborated his conclusions. Resort by the trial judge to such personal inspection is warranted in cases of this nature, see American Tile and Terrazzo Company v. Keiler, 200 So.2d 350 (La.App. 4th Cir. 1967).
Such conclusions were also warranted in view of the express handwritten provisions specifying the work to be performed, which contract was prepared by defendant’s representative. This building contract stipulated, for example, with respect to the addition attached to the existing kitchen that “kit [kitchen] * * * addition to match house in foundation & framing & exterior finish.” (Plaintiff Exhibit No. 1 — Emphasis added) This contract provision lends weight to the conclusion by the trial court that the defendant was required to do “a better job in joining the old section and new sections together so that the difference in levels would be less noticeable.”
Similarly, the contract sued on contains the provision, “Level rear section of den floor.” (Plaintiff Exhibit No. 1) Both plaintiff and his wife testified that the contract was executed at the table which was resting across the hump in the existing den floor, which was a matter of extreme concern and importance to them and which was pointed out to defendant’s representative who wrote the contract in question. The inclusion of this provision in the contract certainly corroborates the testimony of the plaintiff and his wife in this regard and indicates that the defendant did in fact obligate itself to so correct the unevenness in the den floor.
Defendant argues that the use of the word “rear” in the contract obligated defendant only to level the rear part of the den floor and not the entire den floor. Suffice it to say, the provision is ambiguous, and inasmuch the contract was prepared by defendant, any ambiguity therein must be construed against defendant and in favor of plaintiff, Lawson v. Martin Timber Company, 238 La. 467, 115 So.2d 821 (1959); Pelican Construction Company v. Sewerage and Water Board of New Orleans, 240 So.2d 556 (La.App. 4th Cir. 1970). The parol evidence offered by plaintiff was properly admissible and considered by the trial court in order to ascertain the true intent of the parties, Love v. Dedon, 239 La. 109, 118 So.2d 122 (1960). It is obvious from a review of the record that there is ample testimony substantiating the conclusion that defendant was indeed obligated to correct the unevenness in the den floor and that the discussions which took place between defendant’s representative, on the one hand, and plaintiff and his wife, on the other, resulted in the inclusion of the last sentence in the specifications of the contract in question. (Record, pp. 92, 367)
Defendant makes reference to certain specified printed clauses which defendant asserts preclude the proper imposition of liability upon defendant as was done by the trial court. The record shows, however, that the contract signed by plaintiff and his wife on the front page nowhere indicates or makes any reference to any additional conditions, clauses or obligations as they appear on the reverse side of the contract. Indeed, there is nothing reflected on the front page of the contract which would in any way reasonably call one’s attention to the additional alleged provisions of the contract appearing on the reverse side. (Plaintiff Exhibit No. 1) The record contains evidence that neither plaintiff nor his wife were advised or *168 aware of the provisions appearing on the reverse side of the contract form. (Record, p. 371) Be that as it may, it is well established that the handwritten specifications and obligations of the contract appearing on the front prevail over any printed provisions, Kuhn v. Stan A. Planche Real Estate Company, 249 La. 85, 185 So.2d 210 (1966), and the handwritten portions of the contract substantiate the trial court’s conclusions that defendant was indeed obligated to perform the work contracted for in a workmanlike manner, which would require that the joining of the floors be more evenly accomplished so as to render same not as noticeable.
The second specification of error addresses itself to the awarding by the trial court of damages to the plaintiff to remedy the unevenness in the new addition to the kitchen, where the evidence allegedly failed to preponderate in favor of plaintiff’s contention that the kitchen addition was not constructed in a good and workmanlike manner. This specification of error is likewise without merit, since our review of the record reflects that the trial judge had ample evidence to substantiate his conclusion that this aspect of the work was likewise not performed in a good workmanlike manner.
The pertinent findings of fact and reasons for judgment rendered by the trial court with regard to this aspect are the following:
“In the opinion of the court the same situation prevails in the kitchen, but to a lesser degree. There is an obvious slope that prevails in the new section of the kitchen. Plaintiffs witnesses stated that this was merely an optical illusion and that their surveys show that the new section is perfectly level. Nonetheless, the court believes that corrective measures are required to correct this defect.” (Written Reasons for Judgment, Record, p. 23 — Emphasis added)
It is obvious from a reading of the record that the trial judge meant to use the word “defendant’s” for the word “plaintiff’s” where the latter word appears in the reasons for judgment. The trial court made personal observation of the premises and the work performed and chose to accept the testimony offered on behalf of plaintiff (Record, pp. 76, 132, 178, 199) over that offered on behalf of defendant. Factual conclusions by the trial judge are entitled to great weight and will not be disturbed upon appellate review in the absence of manifest error, especially when they are based upon an evaluation of the credibility of opposing witnesses, Kendrick v. Kendrick, 236 La. 34, 106 So.2d 707 (1958); Orlando v. Polito, 228 La. 846, 84 So.2d 433 (1955).
Appellant’s third specification of error involves the alleged awarding of damages by the trial court in favor of plaintiff for defects which were not alleged with specificity in the petition, such as the dip in the concrete slab for the newly constructed porch and the weak spot in the floor in between the existing den and the existing kitchen. This specification of error is likewise without merit. A review of the petition clearly discloses that plaintiff specifically alleged as Item (b) of paragraph 3 of the petition that the concrete slab floor of the newly constructed porch was not level. With regard to the alleged improper awarding of damages for the “weak spot” in the floor separating the existing kitchen from the existing den, the trial court’s reasons for judgment fail to reflect where any award of damages was made for this alleged defect. On the contrary, it is evident from the trial court’s reasons for judgment that the $1,700 money judgment represented the amount assessed by the trial court as reasonable damages to correct the unevenness or hump in the den floor, the improper joining of the existing kitchen floor with the newly constructed addition to the kitchen, and the dip in the concrete surface of the newly constructed porch. In other words, *169 the trial court awarded plaintiff damages for three of the four particularized defects sued for by plaintiff. (Petition, paragraph 3, subparts (a), (b) and (d), Record, p. 4; Written Reasons for Judgment, Record, pp. 21-24)
Appellant’s final specification of error involves the alleged incorrect awarding of damages in favor of plaintiff because plaintiff and his wife allegedly improperly prevented defendant from correcting the defects or at least failed to give defendant a reasonable opportunity to do so. A review of the record satisfies us that this specification of error is likewise without merit, for several months elapsed between the time defendant was properly apprised of the complaints made by plaintiff after the work was supposedly completed and the time when plaintiff or his wife or both advised defendant they were not going to accord defendant any further time to attempt to remedy the defects. We are satisfied from our review of the record that defendant was given ample time and a reasonable opportunity to rectify the un-workmanlike performance, and plaintiff and his wife were justified in finally refusing to give defendant any more time in which to do so.
With regard to plaintiff’s answer to the appeal seeking an increase in the award of damages, we are satisfied that the only justifiable complaint which plaintiff has made concerns the refusal by the trial court to grant plaintiff an award of damages for the uneven roof line on the outside of the kitchen and the addition to the kitchen. The trial court specifically recognized the existence of this irregularity or failure of the roof line to match but obviously dismissed this irregularity for the reason that there was no demonstrated attendant structural weakness or obvious deformity necessitating corrective measures:
“ * * * It is true that there is a small irregularity at a point where the old and new roof lines were joined together, but the testimony indicates no attendant structural weakness and there is no obvious deformity requiring corrective measures.” (Written Reasons for Judgment, Record, p. 23)
While this defective condition may not result in a lack of structural soundness in plaintiff’s residence, nevertheless, we feel that plaintiff is entitled under the express provisions of the contract to have the old and the new.roof line match in the area of this addition to the kitchen, in view of the following express specification contained in the contract: “kit [kitchen] * * * addition to match house in foundation & framing & exterior finish.” (Plaintiff Exhibit No. 1 — Emphasis added) The cause of this defect was explained by the expert contractor who testified on behalf of plaintiff, who indicated that while the roof line was structurally sound, it created a bad appearance. (Record, pp. 107-109) This expert testified that the cost for remedying this unworkmanlike performance would be $400 to $500. (Record, p. 132) The judgment of the trial court will, therefore, be amended to increase by $400 the award of damages to plaintiff, or from $1,700 to $2,100.
Our review of the record fails to disclose where the trial judge otherwise erred in his assessment of damages which plaintiff-appellee is entitled to recover from defendant-appellant.
For the foregoing reasons, the judgment appealed from is amended so as to award plaintiff, Charles Bergeron, judgment against defendant, Parish Lumber Home Improvements, Inc., in the principal sum of $2,100. In all other respects the judgment is affirmed. All costs of this appeal are assessed to defendant-appellant.
Amended and as amended affirmed.

. Plaintiff is accorded a cause of action against defendant of the nature herein instituted by virtue of Louisiana Civil Code Article 2769, which provides the following:
“If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his noncompliance with his contract.”