**WILMINGTON TRUST COMPANY, Executor under Will of William H. Parsons, Deceased, Plaintiff,**

v.

**John F. CLARK and Mary A. Clark, Defendants.**

Court of Chancery of Delaware, Kent.

Submitted July 10, 1974.

Decided Aug. 28, 1974.

Henry R. Horsey of Morris, James, Hitchens & Williams, Dover, for plaintiff.

William M. Chasanov of Brown, Shiels & Barros, Georgetown, for defendants.

MARVEL, Vice Chancellor:

On October 30, 1970, the defendants John and Mary Clark as sellers and William Parsons as buyer entered into a contract under the terms of which the former undertook to sell to the latter " . . . all of the merchantable timber . . . standing and growing upon . . . " a 50 acre tract of land owned by defendants and located near Greenwood in Sussex County, paragraph 3 of the agreement providing that Mr. Parsons " . . . shall have a period of two (2) years from the date of the execution of this Agreement in which to cut and remove the said merchantable timber, or an additional one (1) year if because of weather conditions he is delayed in removing the timber." The consideration for the grant to Mr. Parsons was the sum of $6,000, which was paid to the sellers at the time of the execution of the contract.

Plaintiff, the executor of the estate of William Parsons, who died in December following the execution of the contract in issue, seeks specific performance of such contract in the form of an order directing defendants to grant an extension of time within which plaintiff may cut and remove the timber in issue, its performance of the contract not having been accomplished in time because of allegedly abnormally heavy rains in the area in issue which occurred during the months of May and June 1972.

Alternatively, plaintiff seeks rescission of such contract and the return to plaintiff of the sum of $6,000 paid for the right granted to Mr. Parsons to cut and remove the timber in issue.

The tract here involved was one of some 180 parcels of real estate held in the Parsons estate at the time of such decedent's death, which, plaintiff contends, required a year merely to have appraised. However, the contract in issue appears to have been the only contract concerned with an interest in lands held by such decedent at the time of his death. And while under the provisions of paragraphs 1 and 2 of the agreement in issue the sellers undertook to "grant" the standing timber upon receipt of $6,000, which was paid on October 30, 1970, the contract was silent as to what was to happen in the event that the buyer should fail to remove all of the timber in question within the time provided for in the contract, and normally entry on another's land to remove timber after the expiration of the time fixed in a contract constitutes a trespass, 52 Am.Jur.2d, Logs and Timber, § 119.

As noted above, Mr. Parsons died in December, 1970, less than two months after executing the agreement in issue, plaintiff being thereafter appointed executor of such decedent's estate on December 30, 1970.

Finally, on November 17, 1972 plaintiff commenced this action following defendants' refusal either to agree to the granting of an additional year within which to cut and remove the timber in question or to refund the $6,000 paid in advance by Mr. Parsons.

The critical extension clause here in issue means to me that if weather conditions should prevent the buyer from removing the timber during the contract period of two years, then an extension of one year would be granted for such removal. Compare Lawson v. Martin Timber Co., 238 La. 467, 115 So.2d 821. And I conclude

that it was not reasonable for the plaintiff, notwithstanding the complexities presented in the settling of the Parsons estate, to do nothing about the cutting and removal of the timber in issue until late in the second year of the parties' contract. In short, plaintiff did not exert due diligence in going about the cutting and removal of such timber in light of the terms of the contract, 52 Am.Jur.2d, Logs and Timber, § 45.

Thus, notwithstanding evidence to the effect that May and June of 1972 were months of abnormally excessive rainfall in the area of Sussex County here involved, plaintiff has not, in my opinion, demonstrated that weather conditions during the rest of the two year period here involved were as similarly adverse to the logging enterprise here in issue as were the conditions existing in May and June of 1972. In fact, there would appear to be no good reason why the timber in issue was not cut and removed in the late summer and autumn of 1972. In short, during most of the two year period, apart from having the timber rights in question appraised, the bank did nothing about the contract until it was approached in May, 1972 by one Lawrence Mast, a logger, who had expressed an interest in buying such rights. By that time, of course, the agreement had only a few months to run.

Apart from adverse weather conditions the contract is silent as to other grounds for its extension. Accordingly, in my opinion, the Court would be justified in ordering an extension of time for the performance by the buyer of the contract in question only if the cutting and removal of such timber had been prevented by an act of the seller, and act of God, or some totally unforeseeable cause, none of which occurrences came to pass. See Felder v. Oldham, 199 Ga. 820, 35 S.E.2d 497.

The general rule is that while a buyer has the theoretical right to remove standing timber which he has purchased

after the time fixed for removal of such purchased timber, normally he cannot do so without committing criminal and civil trespass, 52 Am.Jur.2d, Logs and Timber, §§ 43–48, 50 and 119, and Annotation, 164 A. L.R. 434. It would appear accordingly that plaintiff is in the unenviable position of having a right without a remedy.

■ And while the sellers' delay here in answering the buyer's request for an extension of time for removal of the timber in question may have temporarily induced inaction on the part of the plaintiff bank at the very end of the two year period, this does not explain or excuse the buyer's previous delay of over a year and a half in proceeding to make arrangements for the cutting and removal of the timber in issue, there being no facts of record concerning adverse weather conditions which would justify delays over the remainder of the two year period, a mere fraction of which (from five to ten weeks) would have been required to cut and carry off the timber in question.

■ Because equity does not favor forfeitures, it will, wherever possible, construe an ambiguous provision of a contract as a covenant rather than a condition, Delaware Land & Development Co. v. First & Central Church, 16 Del.Ch. 410, 147 A. 165. But in the case at bar, paragraph 3 of the contract contains no language which can be construed as expressing an intent that the time limit for the cutting and removal of the timber in question was to be deemed a mere covenant. Such provision must therefore be construed as a limitation to the title granted the buyer under paragraph 1.

■ The contract, fairly construed means, I believe, that the buyer would become the absolute owner of all timber removed within the stipulated period, but would have no right to remove any remaining timber cut thereafter unless permitted to by the landowner. In other words, the consideration which the plain-

tiff unwisely paid in full on the date of execution of the contract must be deemed to have been fixed so as to take into account the time limit and the possibility that such buyer might fail to remove the timber in question within the time granted. Thus, the time limit in fact formed an essential part of the bargain. Accordingly, to excuse plaintiff's nonperformance on the ground that it has led to an unfair forfeiture seems wholly unwarranted. See Crofoot Lumber v. Thompson (3rd Dist.) 163 Cal.App.2d 324, 329 P.2d 302.

In advancing its claim for specific performance or alternatively rescission, plaintiff relies on the case of New Castle Boat Co. v. Gambacorta, 38 Del.Ch. 600, 157 A. 2d 582, but such case is factually distinguishable. The landlord there had declared a forfeiture of a lease which had not yet expired under its own terms because of the lessee's allegedly late tender of a rental payment. Here, however, no premature extinguishment of the buyer's rights had occurred. Rather, its rights expired as provided for by the terms of the agreement and were not cut off prematurely because of a breach.

■ Thus, while the result reached is harsh, it finds support in the many logging and timber decisions found in 52 Am.Jur.2d, Logs and Timber, in which as a result of dilatory action on the part of a buyer in failing to cut and remove timber he has purchased on time dire consequences have ensued. In short, plaintiff has no one to blame but itself for the dilemma in which it finds itself. I accordingly decline to order an extension of the time contractually allowed for plaintiff's performance, the time fixed for such having long since expired, or to order rescission of the contract in issue, there being no showing of fraud or mistake or other basis for the granting of such form of relief. Finally, while defendants have obviously been enriched as a result of plaintiff's inaction, in light of the terms of the contract sued upon and the evidence as to relevant weather conditions

during the two year period expiring October 30, 1972, it cannot be said that such enrichment was unjustly achieved.

An order granting judgment to defendants and dismissing the complaint may be submitted.