HAWTHORNE, Justice.
 

 This is a suit by Peter P. Jurisich, surviving partner, against the administrator of the succession of his deceased partner, Mrs. Catherine Jurisich Quarrella, in which he seeks a judgment ordering the administrator to convey to him the one-half interest of the deceased in a partnership known as the Morning 'Call Coffee Stand for the sum of $8,044.18, pursuant to the provisions of Article 7 of a partnership agreement entered into by plaintiff and the deceased. The district court rendered judgment as prayed for, and the administrator has appealed.
 

 The business known as the Morning Call Coffee Stand is in the French Market in New Orleans, and according to the pleadings has been in the same family for over 50 years and has been conducted continuously and uninterruptedly at the same location. On April 21, 1949, plaintiff and the deceased, who were brother and sister, entered into a partnership agreement for the purpose of operating the business, with each owning an undivided 50 per cent interest. Article 7 of this partnership agree-, ment provides:
 

 “It is agreed that upon the death of either one of the partners, the surviving partner shall have the right and privilege of buying out the interest of the deceased partner and/or of his Estate in the partnership business at its
 
 then hook value.
 
 The surviving partner , shall automatically become the liquidator of the affairs of the partnership and shall expeditiously liquidate the same.” (All italics ours.)
 

 Mrs. Catherine Jurisich Quarrella, one of the partners, died on March 2, 1951, and according to the books of the partnership her interest in the partnership business at that time amounted to $11,244.19. Since her death her heirs have drawn from the partnership certain sums, and -it was stipulated and agreed on the trial of the case that the deceased’s interest as shown by the books of the partnership was $8,044.18.
 

 
 *330
 
 In opposing plaintiff’s offer to purchase the interest of the deceased for $8,044.18, the administrator takes the position that good will is a valuable asset of this partnership, and that the value of good will should have been considered in determining the “book value” as that term is used in Article 7 of the partnership agreement. It is undisputed, however, that there was no good will account on the.books, and that no value for good will was shown on the books of the partnership.
 

 According to Webster’s New International Dictionary (2d ed.), p. 309, the words “book value” mean: “The value of anything a§ shown by the books of account of the business owning it; specif., of stock, the value as indicated by the excess of assets over liabilities.” Black’s Law Dictionary (Deluxe 2d ed.), p. 238, defines the term as: “The value of the stock as shown by the assets and liabilities as carried on the books. * * * ”
 

 In Lane v. Barnard, 185 App.Div. 754, 173 N.Y.S. 714, 717, it was said: “* * The book value of stock ordinarily means the value thereof as shown by the assets and liabilities as
 
 carried on the books
 
 of the company * * In In re Reben’s Will, Sur., 115 N.Y.S.2d 228, 237, the court stated.: “ * * * the ‘book value’ of the stock of a corporation is determined ordinarily by ascertaining the value of all the assets o.f the corporation as
 
 shown on its books-
 
 and deducting therefrom all its liabilities. * * * ” What was said in Corbett v. McClintic-Marshall Corporation, 17 Del.Ch. 165, 151 A. 218, 222, was quoted with approval in Hagan v. Dundore, 187 Md. 430, 50 A.2d 570, wherein the court was discussing the meaning of “book value”: “I think the common understanding of men is that what is meant [by book value] • is a value disclosed by a statement that reveals the money measure of assets and liabilities as they are shown on the books of the company. So that we come to a source back of the statement,, viz., to the books, for an ascertainment of the items and figures from which book value is ultimately derived.” The term “book value” therefore has a well-defined meaning, is unambiguous, and is susceptible of only one construction. .It is the value as shown by the books of the business, and no other value.
 

 Under the administrator’s contention, the value of the partner’s interest would not be computed on “book value”, but according to some other value, its actual, real, or market value. The essence of his whole argument is that the interest is worth more than is shown by the books of the partnership and should therefore be computed on actual worth. This argument cannot prevail. According to Bienvenu’s Accounting and Business Dictionary (2d ed.), p. 41, “book value” means: “The value of an asset reflected by the books of account, as distinguished from the actual or markei; value of same,” In the Hagan case, supra,
 
 *332
 
 the court pointed out that the term “book value” is commonly used in contradistinction to market value.
 

 Under the jurisprudence and law of this state, in the interpretation of a contract legal effect must be given to the instrument according to the true intent of all the parties, and such intent is to be determined from the words used in the contract without the aid of extrinsic evidence when these words are clear and explicit and lead to no absurd consequences. Civil Code, Article 1945; Gulf Refining Co. v. Garrett, 209 La. 674, 25 So.2d 329. Since the term “book value” has a well-defined, clear, and explicit meaning, this court must give legal effect to the instrument as written, according to the true intent of the parties determined from the words used, and cannot create an ambiguity where none exists or rewrite the agreement.
 

 We recognize that good will is often, as alleged here, a very valuable asset of a business. It represents the value of the business over and above the value of its physical property. It is not considered good accounting, however, to set up on the books of a business the value of good will, for there is no justification for setting up this intangible asset until after the good will is purchased or sold. This is the procedure that is usually followed in accounting practice. See Eggleston, Auditing Procedure (Wiley Accounting Series, 2d ed.), sec. 239, p. 192; Graham and Katz, Accounting in Law Practice (2d ed.), sec. 184, p. 279.
 

 There is nothing inequitable, however, in the provision of the partnership agreement which operated to exclude good will by giving to the surviving partner, upon the death of the other, the right and privilege of buying the interest of the deceased at its
 
 then hook value.
 
 At the time the partners entered into the partnership agreement, neither gained any advantage by its insertion, as neither had any way of knowing which partner would die first. This reciprocal clause was for the benefit of both and obviously was inserted so that upon the death of either the survivor might purchase for an easily ascertainable amount the interest of the deceased and thus continue to operate the business without the delays and complications attendant upon appraisal and valuation of' intangible assets.
 

 Article 10 of the partnership agreement provides that the partnership should keep books of account, and that access to these books could be had at all times by each of the partners. Under this provision each partner at all times, from the time the partnership was formed to the death of Mrs. Quarrella, knew or could have known the interest of each as fixed on the books of the partnership. The information was available to each that good will was not carried on the books of the partnership as an asset, and each knew that upon the death of either the survivor would have the right
 
 *334
 
 to purchase the interest of the deceased at the book value. These circumstances fortify our couclusion that the partners themselves could only have intended the result we have reached here.
 

 What we have said here is in no way in conflict with the holding of this court in Succession of Conway, 215 La. 819, 41 So.2d 729, for in the instant case the term “book value” in the partnership agreement effectively excludes good will in determining the value of the deceased partner’s interest.
 

 For the reasons assigned, the judgment appealed from is affirmed, appellant to pay all costs.