260 So.2d 702 (1972)
Mrs. Bernadine Brady COLLINS et al.
v.
UNIVERSAL PARTS COMPANY, Inc., et al.
No. 4735.
Court of Appeal of Louisiana, Fourth Circuit.
April 4, 1972.
Pierre F. Gaudin, Gretna, James J. Grevemberg, New Orleans, for plaintiffs-appellees.
Pilie, Pilie & Landry, Patrick J. Browne, New Orleans, for defendants-appellants.
Before SAMUEL, CHASEZ and GUIDRY, JJ.
GUIDRY, Judge.
This is a suit on a contract instituted by the heirs of Everett G. Collins against Universal Parts Company, Inc. and Stanley J. Massett, the remaining shareholder of said corporation, wherein plaintiffs demand that the named defendants purchase the corporate shares owned by Everett Collins at his death for the sum of $35,000.00 together with legal interest, costs and attorney's *703 fees of ten percent (10%). Exceptions of no right or cause of action and prematurity were filed by the defendants. On the matter of the exceptions the trial court dismissed the suit against Stanley J. Massett individually but allowed plaintiffs leave to amend to name Mr. Massett as receiver of the corporation as a party defendant. The exception of no right or cause of action against the corporation was dismissed as was the exception of prematurity.
Plaintiffs subsequently amended their petition to name the receiver of Universal Parts Company, Inc., as a party defendant. In due course the receiver of the corporation answered plaintiffs' petition and filed a reconventional demand against the original plaintiffs seeking contribution should the corporation be held liable under allegations that the deceased was responsible for any failure on the part of the corporation to buy the shares in question and that the plaintiffs are liable to the same extent as the deceased for having unconditionally accepted his succession. The receiver likewise sought alternatively $2,627.10 representing interest, penalties, attorney's fees and accountant's fees incurred by the corporation allegedly because of the failure of the deceased to carry out his corporate duties conscientiously and in the further alternative $3,559.50 being the amount of the premiums paid by the corporation on insurance policies on the life of the deceased.
The trial court rendered judgment in favor of plaintiffs and against the corporation in receivership in the sum of $35,000.00 together with legal interest and further ordered defendant to take title to the stock owned by Everett G. Collins prior to his death. The lower court did not rule on the reconventional demand of defendants. From this adverse judgment defendants have perfected this appeal.
The facts of the matter are essentially as follows:
On March 11, 1965, Universal Parts Company, Inc. and its two sole shareholders and officers, Everett G. Collins and Stanley J. Massett, entered into a buy-sell agreement funded by four life insurance policies, each in the amount of $25,000.00, on the lives of the two shareholders. Under the agreement, the corporation agreed to buy and each shareholder bound his heirs or estate to sell all the shares in the company which he owned at the time of his death. The corporation was to make the purchase with the insurance proceeds derived from these life insurance policies, Universal Parts Company, Inc., being the beneficiary thereof.
For the purpose of fixing the purchase price of the stock the contract contained the following provision:
"Upon the execution of this agreement, the value of each appearer's interest in the aforesaid corporation of the Par Value Capital Stock of this corporation is hereby fixed at the sum of $35,000.00, which amount shall remain the value for the purpose of this agreement until such time as the aforesaid interest is reappraised by the parties hereto, commencing on August 1, 1966, and on the same date of each successive year thereafter the appearers shall place an appraisal on their respective interest, and such appraisal together with the date thereof attested to by the signatures of all appearers herein shall be noted on the exhibit attached hereto and made a part hereof. This agreement shall be executed in multiple original, and the notation of appraisal shall be made on the original maintained at the business of Universal Parts Co., Inc., but need not appear on the original kept in the Notary's records nor the original filed with New York Life Insurance Company. The parties hereto shall fix the valuation each year by mutual consent according to their determination of the net worth of said corporation, provided that in the event said appearers do not mutually agree as to the `net worth' then and in that event the valuation of each appearer's interest shall be based upon the sum *704 total of the book value of their respective interest in the corporation as shown by the immediately proceeding (sic) annual statement of the corporation, without any valuation being made for `good will'. In the event any appearer refuses to then enter and sign the notation of this valuation as determined by the books, the remaining appearers may enter such notation on the original of the agreement maintained in the office, and shall attach a copy of the annual financial statement of the corporation to said original notifying the said appearer of their actions in writing, and in which event the said valuation shall be considered the last valuation for the purposes of this contract. The last such valuation established as provided herein shall be controlling at the death of any appearer for the purposes of this agreement, provided, that in the event the life insurance carried on the life of any stockholder exceeds the value of his interest as determined herein, the excess thereof shall be payable to the corporation." (Emphasis added)
There were never any reevaluations as required by the contract and none had been made prior to Mr. Collins' death. There were no annual reports prepared for the corporation nor were there financial statements prepared after 1963 even though it was Mr. Collins' responsibility to do so.
The questions we are thus called upon to decide are
1) Pursuant to the terms of the agreement what price is the corporation obligated to pay for the shares of the deceased
2) Under the circumstances, may the defendant corporation redeem the stock of the deceased shareholder
We are of the opinion that the trial court erred in valuing the stock at $35,000.00. The trial court felt that since there was never a reevaluation fixed by mutual consent as per the contract, the last valuation of the stock was therefore the initial one of $35,000.00.
We are of the opinion that the parties to the contract were not at liberty to fix or not to fix a yearly valuation of the stock. The agreement uses the mandatory word "shall" thereby imposing an obligation on the parties to reevaluate their holdings. In fact the contract itself specifically provides for a reappraisal of the stockholders interest on August 1, 1966 and every year thereafter. It was obviously not intended that the value of a shareholder's interest be frozen at $35,000.00 and the parties may not accomplish same by failing to reevaluate as per the stipulations of the agreement.
The contract provides for valuation of the stock when the parties "do not mutually agree as to the `net worth'" of the corporation. When they failed to adjust the value of their stock for redemption purposes as per the mandatory provisions of the agreement, we are of the opinion that the parties failed to "mutually agree as to the `net worth'" of their holdings. This activated the clause of the agreement which automatically valued the stock at the book value as shown by the preceding annual statement excluding goodwill.
As was stated before the corporation did not have an annual statement for the year just preceding Mr. Collins' death. However since then an accountant was employed for the purpose of reconstructing corporate records.
We cannot determine from the record as presently composed whether the accountant was able to reconstruct the financial condition of the corporation with sufficient detail to allow the preparation of an annual report for the year in question. Perhaps he could not since his testimony indicates that all corporate records were not available for him to examine but only bank statements, cancelled checks and deposit tickets. Nevertheless we are compelled to remand this matter for the purpose of receiving *705 evidence in an effort to ascertain the actual value of the corporation as of the end of the year immediately preceding Mr. Collins' death in order that the actual value of the Collins' stock might be determined.
We must point out however that if it is impossible to make such a determination for whatever reason, the plaintiffs are not therefore entitled to receive $35,000.00, the initial stock valuation. The record reflects that the deceased, Everett G. Collins performed the bookkeeping and other fiscal duties on behalf of the corporation. It therefore appears that it was he who was responsible for the preparation of the annual statement of the business. Since it was he who was derelict in the performance of his duties thereby creating the problem of valuation, plaintiffs herein may not stand in a better position than the deceased. If such dereliction results in the inability to value the stock under the terms of the contract, plaintiffs will be estopped to force the corporation to purchase the stock since it will be impossible to value same under the terms of the agreement.
Once a valuation has been reached in accordance with the views which we have expressed, the solvency of the corporation must next be determined since its ability to purchase the shares is contingent on its solvency. LSA-R.S. 12:55(A) provides in part as follows:
"A. A corporation shall not purchase or redeem its shares when it is insolvent, or when such purchase or redemption would render it insolvent, or at a price, in the case of shares subject to redemption, exceeding the redemption price thereof, or when its net assets are less than, or such purchase or redemption would reduce its net assets below, the aggregate amount payable on liquidation upon any issued shares, which have a preferential right to participate in the assets in event of liquidation, remaining after the purchase or redemption and cancellation of any shares in connection therewith. Subject to the provisions of this subsection, a corporation may purchase its own shares, or redeem its shares subject to redemption, as provided in the following subsections of this section."
The record indicates that the corporation is presently in receivership and has been in economic difficulty for some time. Assuming that a valuation of the stock can be determined, the rights of corporate creditors may not be prejudiced by diverting corporate assets to redeem stock if the corporation is insolvent or when such redemption will render it insolvent. LSA-R.S. 12:1 (L) defines insolvency as follows:
"L. `Insolvency' means the inability of a corporation to pay its debts as they become due in the usual course of business."
The record reflects that the trial court failed to make a finding of fact relative to the solvency of the corporation. Such a finding is imperative in the instant case. Should the trial court determine that the corporation is insolvent the corporation may not be forced to purchase the deceased's stock regardless of the terms of the agreement at the present time. The insurance proceeds must then be administered in the receivership proceeding to protect the rights of corporate creditors. However should the corporation regain financial stability, it may then, pursuant to the terms of the agreement, purchase the stock at the valuation to be determined as we have enunciated above.
For the foregoing reasons the judgment of the lower court is annulled and set aside and the matter is remanded for further proceedings and judgment in conformity with the views herein expressed; costs of this appeal to be paid by the plaintiffs; all other costs to await a final determination.
Annulled, set aside and remanded.