REDMANN, Chief Judge.
Both sides appeal from a judgment which enforced, in favor of a departing principal shareholder-executive of a corporate insurance agency, a shareholders’ agreement fixing the value of his shares upon "involuntary!’ departure, but awarded the corporation a $7,628 surety bond commission that the departing shareholder had collected after departing and denied the shareholder two months’ salary that had been promised him at the time his departure was being arranged. We affirm.
I
The shareholders’ agreement provides that, should a shareholder “be requested [by the majority]- for reasons of business, dispute or personality, or for other reasons to resign or leave the corporation, then [that] shareholder ... shall, prior to the resignation, offer all [his] stock for sale to the corporation” for the price of its last valuation fixed in accordance with other provisions of the agreement. (The agreement’s only other provision on value applies to voluntary departure, in effect to compete, in which case the departer gets only one fourth of the valuation and owes $25,000 liquidated damages.)
Plaintiff was one of the principal shareholders in the corporation that originally contained his name in its name of “Ellsworth, Mayeaux & Associates, Inc.” There is no point in a lengthy discussion of the evidence of the continual, pervasive and long-abiding conflict between plaintiff and the other principal shareholders. The basically factual conclusion of the trial judge that plaintiff left “involuntarily” within the meaning of the shareholders’ agreement is reasonably supported by the record, notwithstanding that “absolutely, unequivocally,” there was never a verbal “request” that plaintiff leave the corporation (though there was a proposal that he leave the board of directors for a six-month trial period, and there was a proposal, among others, that he depart).
Defendants argue that plaintiff’s departure was voluntary, because some days before departing plaintiff had decided to form his own competing business, and breached *889 a “fiduciary duty” to the corporation by thereafter soliciting corporate clients and employees for that purpose while still an employee of the corporation. Whether plaintiffs decision to form his own business or his recognition that he was being forced out came first is essentially a factual question, and there can be no doubt that the conflict long pre-existed plaintiffs decision to form his own business. The trial judge reasoned:
“Defendants would have the court believe that they did not wish to nudge their partner out but when one looks at what was done objectively, there is no doubt in this court’s mind that Percy Mayeaux was shoved out the door. From the words, as well as the tenor, of the testimony of William H. Ellsworth, this court discerned a conviction that he had tried to accomodate Percy Mayeaux but, having tried and failed, he felt that Percy Mayeaux should leave. This court was impressed by all of the remaining partners in the defendant firm that there was a feeling of relief in their minds and hearts. At the moment that Percy May-eaux concurred in the proposal that he depart, those who remained with the agency were willing to be bound by Article XIV [for “involuntary” departure]. Thus the value of the stock was fixed by the terms of Article XIV.
“This court believes that no subsequent act or action taken by a departing shareholder would affect the right of that shareholder to have the value dictated by the nature of the termination, not by acts or actions taken by him subsequent to the termination. This court would add parenthetically that when a departing shareholder is “forced out” or involuntarily departs, it is not unlikely that the departer will leave with bitterness and could very well resort to conduct not appreciated nor contemplated by those from whom he has departed. But such subsequent acts do not affect the value of the shares as provided under Article XIV of the Shareholders’ Agreement.”
Defendants claim, alternatively, that at least the stock value should be reduced for the value of business that plaintiff had solicited to take with him before departing. The fairness of such a reduction is eminently clear in a case where an overall evaluation of corporate assets determines the value of a departing shareholder’s stock. But the shareholder’s agreement here provided for a very different method of valuation (80% of one year’s income, from fire and casualty commissions only), and the fairness of reducing that “valuation” because of clients solicited before departing is eminently unclear.
The shareholders’ agreement is the law between the parties and is enforceable in accordance with its terms, in the absence of some absurd or evidently unintended result. Defendant can no more have the contractually-stipulated valuation reduced than plaintiff can have it increased, notwithstanding the showing by both that that valuation may fail to take into account certain circumstances that would tend to increase or decrease the actual value of the stock.
II
We agree with defendant that a departing executive of an insurance agency corporation would breach his duty (“fiduciary” or not) to the corporation by any device that would deny to the corporation the income from policies or bonds that a client must have during the executive’s tenure with the corporation. But, in the absence of an express contractual provision to the contrary — especially in the ease of incorpo-rators who have contributed to the corporation all it has, and to whom the corporation is as indebted as they to it — we know of no rule that a departing insurance agent owes to his employer (a corporation about as much his as any other shareholder’s) to keep his friends, acquaintances and customers ignorant about his future plans. In any ease, defendant has not shown any damage that it suffered that it would not equally have suffered had plaintiff waited *890 a few days until after departure to solicit the clients he successfully solicited.
The $7,628 commission on a contractor’s performance bond that the judgment awarded to defendant is cited by defendant as an instance of plaintiffs breach. Plaintiff argues that the bond, written the day before he left defendant, had to be rewritten as two bonds, with two sureties, immediately after he left and that the commission is therefore due to him. The trial judge rightly awarded that commission to defendant, which (acting through its employee, plaintiff) sold the bond, notwithstanding the later reformulation into two bonds. We affirm that award.
But the record does not establish any damages otherwise, and a breach of duty is not remediable in law unless it results in damage to the obligee.
Ill
Plaintiff’s claim for two additional months’ salary was rightly rejected because the cause for that promise was defendant’s desire to confer a benefit upon a faithful employee who was leaving its employment. That cause was mistaken, in that the employee was not faithful but was soliciting corporate clients to become his new business’s clients. “[A] contract is said to be without a cause, whenever the party is in error, supposing that which was his inducement for contracting to exist, when in fact it had never existed, or had ceased to exist before the contract was made.” La.C.C. art. 1896 (prior to La. Acts 1984 No. 331).
Affirmed; costs of appeal to be equally divided.
LOBRANO, concurs with opinion.