**NICHOLS CONSTRUCTION CORP., et al**

v.

**Carmen ST. CLAIR.**

**Civ. A. No. 83–1251–B.**

United States District Court, M.D. Louisiana.

March 8, 1989.

Frederick R. Tulley, Baton Rouge, La., Larry Bankston, Baton Rouge, La., for plaintiff.

Donald L. Beckner, Robert J. Collins, Baton Rouge, La., for defendant.

## OPINION

POLOZOLA, District Judge.

Nichols Construction Corporation ("Nichols") and Harmony Corporation ("Harmony") originally filed this suit in state court to recover $288,972.00 from the Estate of Mary Lee Poppenhouse St. Clair, as a result of an overpayment by Nichols and Harmony for the redemption of stock in these corporations. The suit was timely removed to this court. Thereafter, Carmen St. Clair filed a counterclaim against Nichols, Harmony, International Maintenance Corporation ("IMC"), National Maintenance Corporation ("NMC"), Crest, Inc. ("Crest") and Bert S. Turner.[1]

The counterclaim filed in this case was filed by St. Clair in his individual capacity even though St. Clair had originally been sued in his representative capacity. Because the Court has subject matter jurisdiction on both the original suit and on the

1. The Court will refer to these parties as the Turner defendants.

counterclaim under 28 U.S.C. § 1332, the Court, in the interest of justice and judicial economy and without objection from the parties, permitted the counterclaim to be filed herein. In his counterclaim, St. Clair contends that when the Turner defendants redeemed his stock and the stock of his wife's estate, the Turner defendants should have paid St. Clair and his wife's estate more than the book value of the stock which was fixed in the stock redemption agreement.

This matter is now before the Court on the motion of Nichols and Harmony for summary judgment on the main demand. The Turner defendants have also filed a motion for summary judgment on the counterclaim filed by St. Clair. The Court heard oral arguments on these motions and granted the motion of Nichols and Harmony for summary judgment in the sum of $288,972.00 against the Estate of Mary Lee Poppenhouse St. Clair. The Court also granted summary judgment in favor of the Turner defendants on all issues except Count Six of the counterclaim. The Court now assigns the following reasons for its decision.

## I. The Main Demand

The original demand filed by Nichols and Harmony seeks to recover $288,972.00 from the Estate of Mrs. St. Clair. The defendant admits that the estate did receive an overpayment of $288,972.00 as that amount was computed under the terms of the stock redemption agreement. Because there is no issue of material fact in dispute and because Nichols and Harmony are entitled to judgment as a matter of law, Nichols and Harmony are entitled to summary judgment in the amount of $288,-972.00 from the Estate of Mary Lee Poppenhouse St. Clair.

## II. The Counterclaim of Carmen St. Clair

St. Clair filed a counterclaim against the Turner defendants. In his counterclaim, St. Clair alleges that he and his wife's estate should have received more than book value for their stock when the stock was redeemed by the Turner defendants. Specifically, St. Clair contends that although the stock redemption agreement fixed the value of the stock at book value, the stock should have been redeemed for a higher value. Counsel for St. Clair has admitted during oral argument that he does not allege fraud on the part of the Turner defendants. Furthermore, St. Clair does not seek to void the stock liquidation agreement and agrees that the book value actually paid to him and his wife's estate was properly and accurately calculated. What St. Clair seeks in his counterclaim is to have the Turner defendants redeem his stock at actual or fair value rather than at net book value. St. Clair contends that the Turner defendants owed him, as a minority shareholder, a fiduciary obligation to pay a higher price for his stock. In response to this counterclaim, the Turner defendants contend that St. Clair has been paid in accordance with the purchase price agreed to by St. Clair and the Turner defendants on December 21, 1982.

It is clear that prior to the December 21, 1982 stock redemption agreements there was no obligation on the part of the Turner defendants to buy the stock owned by St. Clair or his wife. In accordance with the stock redemption agreements, the Turner defendants offered to purchase the stock of St. Clair and his wife at book value and St. Clair agreed to a sale of the stock in accordance with the terms of the agreement. Formal stock redemption agreements were executed by St. Clair and Nichols, Harmony, IMC, NMC and Crest. St. Clair also executed stock redemption agreements on behalf of the Estate of Mary Lee Poppenhouse St. Clair and Nichols, Harmony, IMC, NMC and Crest. A Florida state court having jurisdiction over the estate of Mrs. St. Clair granted to St. Clair the authority to execute the stock redemption agreements. In addition, all of the children of Carmen St. Clair and Mary Lee Poppenhouse St. Clair executed written concurrences to the stock redemption agreements.

Each of the stock redemption agreements provided that the seller [the St. Clairs] transferred all of their "right, title and interest in and to all of the outstanding stock of the corporation which is presently

owned by seller for the price set forth in Article II of this agreement." In accordance with Article II of the agreement, it is provided that the "sale is made for a price equal to the book value of the ... shares of the corporation as of October 31, 1982. 'Book value' shall be determined in accordance with the generally accepted accounting principles applied consistently from year to year. The corporation shall cause its chief financial officer to complete the determination of book value no later than sixty days from the date hereof. Seller shall have reasonable access to the books of the corporation to verify such determination." It is clear that the net book value of the shares which were redeemed was correctly calculated in accordance with paragraph 2 of the stock redemption agreements. St. Clair acknowledges that the book value for his stock was properly calculated and paid to him and that an excess payment in the sum of $282,173.00 was paid to his wife's estate. Thus, the only issue for the Court to determine is whether or not any additional sums should have been paid by the Turner defendants to the St. Clairs. The Court finds that the agreements were properly and fairly negotiated without any evidence of fraud, error or mistake. Therefore, these agreements shall be enforced as written.

The stock redemption agreements provided that the agreements shall be governed by the laws of the State of Louisiana and may only be amended by a written agreement. No written modification to the stock redemption agreements were executed by the parties. There is no provision in the Louisiana Business Corporation Law, La.R.S. 12:1 et seq. which requires a corporation to redeem any of its stock unless the articles or some other agreement imposes such an obligation on the corporation. The articles of incorporation in this case did not require stock redemption by the corporation. The only requirement to redeem the stock involved in this case was set forth in the stock redemption agreements signed by the parties on December 21, 1982. Although St. Clair concedes that the Turner corporations owed no duty to redeem his or his wife's stock, he argues that when the Turner corporations decided to buy his stock, they owed him a fiduciary duty to pay a fair value for the stock. Because there was no fraud or misrepresentation involved in this case on the part of the Turner defendants, the Court finds that no fiduciary duty was owed by the Turner corporations and defendants to the St. Clairs in connection with the purchase of their stock.

It is clear under the facts of this case that the St. Clairs were not forced to sell their stock to the corporation. There were no restrictions involved in either the articles of incorporation or the stock redemption agreements which would have prevented the St. Clairs from selling their stock to a third party. Thus, the stock redemption agreements entered into on December 21, 1982 were valid.

In *Mayeaux v. Ellsworth, Schexnaydre & Crosby, Inc.*, 470 So.2d 887, 889 (La.App. 4th Cir.1985) the court held that the "shareholders' agreement is the law between the parties and is enforceable in accordance with its terms, in the absence of some absurd or evidently unintended result. Defendant can no more have the contractually stipulated valuation reduced than plaintiff can have it increased, notwithstanding the showing by both that that valuation may fail to take into account certain circumstances that would tend to increase or decrease the actual value of the stock." As noted earlier, the parties in this case agreed to buy and sell the stock at book value. In *Succession of Jurisich*, 224 La. 325, 69 So.2d 361 (La.1953) the Louisiana Supreme Court said that the term "book value" in a similar agreement was the value of an asset as reflected by the books of account of the company as distinguished from the actual or market value of the asset. The business records of the corporation must be kept correctly and consistently according to reasonable accounting principles and practices. *Drs. Brown, Carter & Sauls v. Sauls*, 418 So.2d 706 (La. App. 3rd Cir.1982). The terms of the stock

redemption agreements provided that St. Clair had a right to inspect the books of the corporation to ensure that the value of the stock was set at book value. St. Clair concedes and the evidence is clear that the Turner defendants properly computed the stock at book value.

There is simply no reason for this Court not to enforce the stock redemption agreements in this case. Louisiana courts have enforced similar agreements providing for the redemption of stock at book value. See, *Drs. Brown, Carter & Sauls v. Sauls, supra; Collins v. Universal Parts Co.,* 260 So.2d 702 (La.App. 4th Cir.1972). St. Clair has not cited and the Court has been unable to find any provision in the Louisiana Business Corporation Law which would require the corporation to purchase the stock other than at the price agreed to in the stock redemption agreement.[2]

St. Clair relies heavily on *Mansfield Hardwood Lumber Co. v. Johnson,* 263 F.2d 748 (5th Cir.1959), *cert. denied* 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959), *rehearing denied* 361 U.S. 926, 80 S.Ct. 290, 4 L.Ed.2d 241 (1959). However, *Mansfield Hardwood* does not apply under the facts of this case because St. Clair has conceded and the Court has found that the Turner defendants were not guilty of any fraud in the negotiation, preparation or compliance with the stock redemption agreements.[3]

The Louisiana courts have not equated the mere failure to pay "fair value" for stock under a stock redemption agreement to fraud or breach of fiduciary duty. This fact was made amply clear in *W.A. McMichael Constr. Co. v. D & W Properties,* 356 So.2d 1115, 1122 (La.App. 2nd Cir. 1978), *writ refused* 359 So.2d 198 (La.1978). In this case, the court concluded that the decision in *Mansfield Hardwood* was predicated on the failure to disclose material facts in connection with the sale. The court further concluded that where a fiduciary secured an advantage by failing to disclose material information to the detriment of the minority shareholder, the transaction was voidable under Louisiana law.

Thus, the Court finds that the stock redemption agreements entered into between the St. Clairs and the Turner defendants were valid. There is no evidence that the Turner defendants made any material misrepresentations to the St. Clairs or failed to disclose any material facts in connection with the purchase of the stock. There are no allegations of fraud on the part of the Turner defendants. The Turner defendants paid book value for the stock as set forth in the redemption agreement. St. Clair concedes that the book value was properly calculated. In the absence of fraud, concealment or other misrepresentation, St. Clair is bound by the stock redemption agreements. *Mayeaux v. Ellsworth, Schexnaydre & Crosby, supra.*[4] St. Clair has been paid over $3,000,000.00 for his stock in accordance with the stock redemption agreements. This Court must enforce the stock redemption agreements as written. Therefore, the motion for summary judgment filed by the Turner defendants shall be granted on all issues except

2. La.R.S. 12:55 places a limitation on the maximum price which may be paid under certain circumstances. Thus, if the redemption would reduce the stated capital below the "aggregate allocated value of the issued shares" remaining after the redemption and cancellation of the shares being redeemed, or if to do so would render the corporation insolvent, not even book value may be paid. *See Collins v. Universal Parts Co.,* 260 So.2d 702 (La.App. 4th Cir.1972).

3. In *Mansfield Hardwood Lumber Co. v. Johnson,* 263 F.2d 748 (5th Cir.1959), *cert. denied* 361 U.S. 885, 80 S.Ct. 156, 4 L.Ed.2d 120 (1959), *rehearing denied* 361 U.S. 926, 80 S.Ct. 290, 4 L.Ed.2d 241 (1959) the Court found that the officers had made promises and representations to the minority shareholders that future dividends would be curtailed while the properties owned by the company were reforested. The Court also found that those same officers failed to disclose to minority shareholders the anticipated liquidation of the corporation at a price greatly exceeding the book value of the stock.

4. St. Clair knew exactly what redemption and book value meant because he was familiar with the affairs of the corporation and also was familiar with the previous redemption of a minority shareholder's stock at book value.

Count Six of the counterclaim.[5]

---

**5.** The Turner defendants concede that there are material issues of fact which preclude the Court from granting their summary judgment on Count Six of the counterclaim.