# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-621

DAVID GUIDRY, ET AL.

VERSUS

GULF COAST COIL TUBING, ET AL.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2008-6763
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## ULYSSES GENE THIBODEAUX
### CHIEF JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Oswald A. Decuir, and Billy Howard Ezell, Judges.

**AFFIRMED.**

Larry Lane Roy
Alyse Richard
Preis & Roy
102 Versailles Boulevard - Suite 400
Lafayette, LA 70509
Telephone: (337) 237-6062
COUNSEL FOR:
    Plaintiffs/Appellees - David Guidry and Carl Guidroz

Nicholas Dale Doucet
Barkley & Thompson, L. C.
556 Jefferson Street - Suite 200
Lafayette, LA 70501
Telephone: (337) 593-4102
COUNSEL FOR:
    Defendants/Appellants - Gulf Coast Coil Tubing and Nitrogen Services, Inc.

**THIBODEAUX, Chief Judge.**

This case involves a dispute between Defendant-Appellant, Gulf Coast Coil Tubing & Nitrogen Services, Inc. (Gulf Coast), and two officers/shareholders of the company, Plaintiffs/Appellees, David Guidry (Guidry) and Carl Guidroz (Guidroz). The plaintiffs were also directors and employees of the company. Dissatisfied with their performance, Gulf Coast fired Guidry and Guidroz and amended its Articles of Incorporation to provide for the redemption of the stock owned by the two men. The amendments provided that the redemption price would be the "book value" of the stock and then stated that amount as $1.00 per share, which was the purchase price of the stock.

Guidry and Guidroz filed a Petition for Writ of Mandamus, asserting the shareholder's right to inspect the books of Gulf Coast in order to determine the true book value of the stock. They also asserted an entitlement to attorney fees and costs for the company's bad faith in denying the plaintiffs' inspection requests. The trial court found in favor of Guidry and Guidroz and ordered Gulf Coast to present the books for inspection and to pay the litigation costs and attorney fees incurred by the plaintiffs. Gulf Coast appealed the judgment of the trial court. For the reasons set forth fully below, we affirm the judgment of the trial court.

I.

## ISSUES

We must decide:

(1)     whether the trial court manifestly erred in granting the writ of mandamus and ordering Gulf Coast to present its books for inspection in order to determine the "book value" of the plaintiffs' shares; and,

(2)     whether the trial court erred in finding Gulf Coast in bad faith for denying the plaintiffs' inspection

requests and in awarding Guidry and Guidroz attorney fees and costs.

II.

**FACTS AND PROCEDURAL HISTORY**

On March 29, 2006, Carl Guidroz and David Guidry established and incorporated Gulf Coast Coil Tubing & Nitrogen Services, Inc. Guidroz was the President and Chairman of the Board of Directors of the company, and Guidry was the Secretary-Treasurer of the company and a board member. Both men advanced $58,000.00 each and received 58,000 shares of company stock at $1.00 per share, as did three other board members, Gerry Green, Terry Foreman, and Michael Domingue. Hence, the total number of issued shares was 290,000, and the total amount advanced by the five directors/board members was $290,000.00. Each of the five shareholders owned twenty percent (20%) of the company's stock.

Guidroz and Guidry were granted full and exclusive authority for borrowing $900,000.00 and $260,000.00 in bank loans on behalf of the corporation and were granted authority to sign without limitations, all promissory notes and security instruments, including mortgages, as they deemed advantageous to the company. Both men mortgaged their homes and signed notes for the leasing of company trucks. Guidroz and Guidry were also employees of Gulf Coast. Guidroz was the manager of the company, while Guidry worked in the shop, assisting and supervising the welding crews.

On February 4, 2008, a special meeting of the board was called for the purpose of amending the company's Articles of Incorporation to provide: (1) that officers and directors could be removed, with or without cause, by a majority vote of the shareholders; and (2) that the company could redeem at "book value (i.e. price

2

paid)" the stock of any officer and/or director who was removed for cause. The meeting was also called to address the removal of David Guidry and the mandatory redemption of his stock. All five shareholders were in attendance at the meeting during roll call. However, Guidroz and Guidry left shortly thereafter when the other three shareholders refused to allow a court stenographer into the meeting.

The three remaining shareholders, owning a total sixty percent (60%) of the stock, voted to amend the Articles, to remove Guidry for cause, effective immediately, and to redeem his stock at $1.00 per share. The reasons for removal included motivation issues, poor job performance, lack of commitment and failure to attempt to fulfill duties, leaving crew unattended, and a company vehicle seen at a bar during work hours. All three voted in favor, and Foreman was appointed the new Secretary/Treasurer of Gulf Coast. Also discussed was removal of Guidroz for assuming an advocate position on behalf of Guidry, failure to set up compliance training, failure as manager to monitor and mentor employees, making independent decisions that contradicted previous board decisions regarding payment to a vendor. Guidroz was temporarily suspended with pay until the removal meeting in thirty days, and Domingue was appointed the temporary manager of the company.

On February 6, 2008, counsel for the plaintiffs sent correspondence to Gulf Coast indicating that Mr. Guidroz was unhappy with the operation of the company by Green, Foreman, and Domingue, and that his own continued employment was in the best interest of the company. Mr. Guidroz requested minority shareholder protection and, in the absence thereof, offered to sell his stock to Gulf Coast for $150,000.00 and an assumption of all corporate debt that he had guaranteed. Likewise, on the same date, David Guidry offered to sell his stock for $150,000.00.

3

On February 13, 2008, a letter of suspension explaining the stock redemption went out to Guidry. A similar letter, explaining an upcoming meeting to remove Guidroz and redeem his stock, went out to Guidroz.

On February 15, 2008, counsel for Guidroz and Guidry requested the minutes of all board meetings since November 1, 2007. Gulf Coast responded on February 18 that the minutes would be available to the plaintiffs for review at the company office and that they should schedule an appointment. The letter then contained a request to advise Guidry that, when he came in to review the minutes, he should relinquish his stock certificates, the company truck, and any other company property to be returned.

On March 4, 2008, Gulf Coast held the meeting to remove Carl Guidroz and redeem his stock. Mr. Guidroz was in attendance and opposed all motions. The removal letter to Mr. Guidroz went out the next day.

On March 6, 2008, Gulf Coast sent correspondence to Home Bank regarding a release of guaranty for Guidroz and Guidry on all Gulf Coast loans. The letter indicated the enclosure of the minutes, amendments, and resolutions regarding the removal of the two officers and the intended stock redemption. The letter stated, "[t]hey are still shareholders pending redemption of their stock." All three remaining directors/shareholders signed the letter. Guidroz and Guidry, along with the three remaining directors of Gulf Coast, signed release documentation with CitiCapital on March 18, 2008, but there is no evidence that the release was ever perfected, and the plaintiffs assert that the bank has not, and will not, release them from the debt.

On April 29, 2008, Gulf Coast deposited $116,000.00 in an escrow account in an Arkansas bank with instructions to pay $58,000.00 each to Guidroz and

4

Guidry upon physical receipt of their original stock certificates issued by the company.

On May 2, 2008, stock redemption letters went out to Guidroz and Guidry. On May 20, 2008, counsel for Guidroz and Guidry requested profit and loss statements from Gulf Coast for 2007 and 2008. Gulf Coast responded that the plaintiffs were no longer stockholders and that the request would not be granted. The plaintiffs assert that two additional requests for inspection were also denied.

Guidroz and Guidry filed a Petition for Writ of Mandamus asserting their twenty percent (20%) ownership of the outstanding common stock of Gulf Coast. They asserted their entitlement under La.R.S. 12:103 to be provided with the records and accounts of Gulf Coast, and to inspect financial information and minutes of the board meetings of the corporation. These requests had been repeatedly denied. Guidroz and Guidry also prayed for attorney fees and litigation costs for Gulf Coast's bad faith refusal to permit them to exercise their inspection rights under La.R.S. 12:172.

The trial court granted the Writ of Mandamus in favor of Guidroz and Guidry and awarded them attorney fees and costs. In its written reasons for judgment, the trial court stated that the defendants' redemption of the shares was incomplete because there was a dispute as to the valuation of the stock and no evidence of the process used to determine that it had a value of $1.00 per share. The court stated that the defendant corporation could not stipulate that "book value" of the stock was $1.00 per share. Consequently, the court found that Guidroz and Guidry were entitled to inspect the company's books to determine the value of their shares. The court further found that the defendants were in bad faith in refusing the plaintiffs' requests to

inspect the company's records and that Guidroz and Guidry were entitled to attorney fees and costs in the amount of $13,417.72 for Gulf Coast's bad faith.

## III.

## LAW AND DISCUSSION

### Standard of Review

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Stobart v. State, Through DOTD*, 617 So.2d 880 (La.1993); *Rosell v. ESCO*, 549 So.2d 840 (La.1989). A two tiered test must be applied in order to reverse the findings of the trial court:

    a.    the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and

    b.    the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).

*Mart v. Hill*, 505 So.2d 1120 (La.1987).

Even where the appellate court believes its inferences are more reasonable than the fact finders, reasonable determinations and inferences of fact should not be disturbed on appeal. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978). Additionally, a reviewing court must keep in mind that if a trial court's findings are reasonable based upon the entire record and evidence, an appellate court may not reverse said findings even if it is convinced that had it been sitting as trier of fact it would have weighed that evidence differently. *Housely v. Cerise*, 579 So.2d 973 (La.1991). The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between the respective courts.

## Rights of Inspection

Gulf Coast contends that the trial court manifestly erred in granting the plaintiffs' Writ of Mandamus under La.R.S. 12:103 and ordering Gulf Coast to present its books for inspection in order to determine the "book value" of the shares held by Guidry and Guidroz.

Louisiana Revised Statutes 12:103, entitled "Corporate records; right of shareholder to inspect," provides in pertinent part as follows:

> D. (1)(a) Upon at least five days' written notice *any shareholder*, except a business competitor, who is and has been the holder of record of at least *five percent* of the outstanding shares of any class of a corporation for at least *six months* shall have the right to examine, in person or by agent or attorney, at any reasonable time, for any proper and reasonable purpose, any and all of the records and accounts of the corporation and to make extracts therefrom.

La.R.S. 12:103(D)(1)(a) (emphasis added).

On February 15, 2008, counsel for Guidroz and Guidry made a written request for an inspection of the shareholder meeting minutes from November 2007 forward. Correspondence dated May 20, 2008, requested the profit and loss statements from the beginning of 2007. Under the clear wording of the statute, Guidroz and Guidry, who each owned twenty percent (20%) of the outstanding shares of Gulf Coast from the date of its incorporation in March of 2006, were entitled to inspect the records of the company.

Gulf Coast argues that inspection of the company books under La.R.S. 12:103 is an entitlement reserved to shareholders, and that Guidroz and Guidry were not shareholders when they requested inspections after the May 2008 notices of redemption were mailed to them. Gulf Coast further argues that the trial court was wrong in finding that the amended articles' provision for stock redemption at "book

value" *and* at $1.00 per share was contradictory and ambiguous, and in finding that redemption under La.R.S. 12:75(A) was not completed.

We find that the amendments to the company's Articles of Incorporation were deficient, that Guidroz and Guidry are still shareholders with the rights of shareholders to inspect the records of the corporation in order to determine the value of their stock. More specifically, La.R.S. 12:75 provides as follows:

§ 75. Voting of shareholders and bondholders

A. Except as provided in R.S. 12:136 and R.S. 12:140.12, and except as otherwise provided in the articles, each shareholder of record shall have the right, at every shareholders' meeting, to one vote for each share standing in his name on the books of the corporation; provided that on and after the date on which written notice of redemption of *redeemable shares* has been mailed to the holders thereof and a *sum sufficient* to redeem such shares has been deposited with a bank or trust company with irrevocable instruction and authority to pay the redemption price to the holders thereof upon surrender of certificates therefor, such shares shall not be entitled to vote on any matter and shall not be deemed to be outstanding shares.

La.R.S. 12:75 (emphasis added).

The above statute removes voting rights after a "sum sufficient" has been deposited.[1] In this case, the "sum sufficient" was never determined. This is true because the amendment stated that the shares would be redeemed at "book value," and the book value of the shares was never determined. Specifically, the amendment indicates that the shares would be redeemed at "book value" and then states two lines later that the "redemption amount shall be the price originally paid or $1.00 per share." This statement indicates that "book value" is synonymous with $1.00 per

_____

[1] We note that La.R.S. 12:75 removes the voting rights of *redeemable shares* sought to be redeemed by depositing a sum sufficient in a bank or trust. The existence of La.R.S. 12:59 brings into question whether the shares of Guidroz and Guidry are actually *redeemable shares* under La.R.S. 12:75. We will briefly address La. 12:59 in another section of this opinion, but our ruling on the right of inspection is limited to the failure of Gulf Coast to determine and deposit the "book value" of the shares in question.

share, and in that regard, the amendment is ambiguous, self conflicting, and deficient. We find that the stock was to be redeemed at book value, that book value is determined by measuring the assets of the business against its liabilities, and that a review of the corporate books and records is required in order to determine book value.

In *Mixon v. Iberia Surgical, L.L.C.,* 06-878 (La.App. 3 Cir. 4/18/07), 956 So.2d 76, *writ denied,* 07-1050 (La. 8/31/07), 962 So.2d 438, where a former member's stock was to be purchased at book value, and the company used the terms "book value" and "fair market value" interchangeably, we explained:

> We agree the terms "Book Value" and "Fair Market Value" are not synonymous and have generally recognized meanings in accounting in valuation . . . . Under the terms of the Operating Agreement, the parties agreed to use the "book value" in determining the value of a member's interest, not fair market value. The book value of a business "has a well-defined meaning, is unambiguous, and is susceptible of only one construction. It is the value as shown by the books of the business, and no other value." *Succession of Jurisich*, 224 La. 325, 69 So.2d 361, 362 (1953). Book value is calculated by measuring the assets of the business against its liabilities. *Id.*

*Mixon*, 956 So.2d at 82-83.

Where book value and the sum sufficient were never determined in this case, redemption could not be effected. Therefore, shareholder status and the rights of inspection were not removed. Accordingly, the Writ of Mandamus of Carl Guidroz and David Guidry, seeking to inspect the records of Gulf Coast pursuant to La.R.S. 12:103, was properly granted.

**Attorney Fees**

Gulf Coast contends that the trial court erred in awarding attorney fees under La.R.S. 12:172 for a bad faith denial of the plaintiffs' requests to inspect its books. That statute provides in pertinent part as follows:

> D. Any corporation, or any officer or agent thereof, which or who shall in bad faith refuse to permit the exercise of inspection rights as defined in, and limited by, R.S. 12:103, shall be liable to the shareholder or shareholders seeking to exercise such rights to the extent of the costs and expenses of any proceeding necessary to enforce such inspection rights, and for any other damages actually sustained by such shareholder or shareholders.

La.R.S. 12:172.

The trial judge found no evidence in the record that Gulf Coast intended to redeem the stock at book value as provided for in its own amended articles of incorporation. He stated that Gulf Coast had arbitrarily and unilaterally priced the stock at $1.00 per share, the price that the plaintiffs originally paid for the stock over two years prior, with no evidence as to why this was an appropriate amount. The court then stated that, "[t]hese actions, together with defendant's refusal to allow the plaintiffs to see the corporation's records to confirm the book value of the stock, demonstrate bad faith." Gulf Coast argues that it was not in bad faith because it had a good faith belief that Guidroz and Guidry were no longer shareholders at the time they requested inspection of the company's records. However, as the plaintiffs point out, their attorney first requested an inspection of the minutes on February 15, 2008, well in advance of the deposit of funds in April and the mailing of the redemption letters in May of 2008.

Gulf Coast's response to this February 2008 request was to agree to provide the records for review. In the next paragraph, however, it requested that Guidry's stock certificates and corporate vehicle be turned over to the corporation at

the time of the review. This never occurred, and all requests for inspection were denied. Guidroz and Guidry analogize Gulf Coast's conduct to that of the defendant corporation's in *Ales v. Sewell,* 00-2018 (La.App. 4 Cir. 10/17/01), 800 So.2d 36.[2] There, the corporation was held to be in bad faith for conditioning the shareholder's access to the requested documents upon his execution of a confidentiality agreement and for later declaring that the plaintiff was not a shareholder. We agree with this analogy, and we agree with the trial court's reasoning in the present case.

As indicated in the fact section of this opinion, Gulf Coast stated in correspondence in March of 2008, after the February meeting to amend the articles and redeem the plaintiffs' stock, and after the plaintiff's February request for inspection, that the plaintiffs were still stockholders until their shares were redeemed. Yet, Gulf Coast argues that it had a good faith belief that the plaintiffs were no longer stockholders. Just because amendments to the articles of incorporation are statutorily allowed for certain purposes and under certain circumstances, Gulf Coast cannot draft self-serving amendments containing arbitrary and unilateral valuations and then plead as a defense its reliance on its own defective provisions. Gulf Coast cited numerous cases for the proposition that the articles of incorporation are contracts, subject to the binding effect of contracts. It should be aware, then, of the principal that, if in doubt or dispute, a contract is interpreted against the one who wrote it. La.Civ.Code art. 2056; *Soloco, Inc. v. Dupree*, 99-1476 (La.App. 3 Cir. 2/9/00), 758 So.2d 851.

The trial judge concluded that a corporation has the "right to amend its articles for the purpose of reclassifying stock and creating redemption rights in stock." Guidry and Guidroz assert that the trial court's statement constitutes a finding

---

[2]After analogizing the *Ales* case in support of their argument on the bad faith issue, the plaintiffs then asserted as error the trial court's failure to specifically find bad faith on the "additional grounds" that they had just discussed in *Ales.* We find this redundant and extraneous; and, as indicated below, the plaintiffs did not answer the appeal and, therefore, cannot assert errors.

that the right to amend the articles and reclassify and redeem the stock could be done without the plaintiffs participation and without notations on the certificates, which is not what the court stated. The plaintiffs then assert that this finding, which they have expanded, constitutes an error, because other statutes, not cited by Gulf Coast, provide that the plaintiffs must be a party to, or vote in favor of, any changes regarding the transfer of their shares, and that the transfer restrictions have to be printed on the share certificates themselves.

More specifically, Guidroz and Guidry argue that La.R.S. 12:59[3] provides that a restriction on the transfer of shares does not affect shares issued before the restriction was adopted, unless the affected shareholders are parties to, or voted in favor of, the restriction agreement. That did not occur in this case. They also argue, pursuant to La.R.S. 12:59, that the restriction is valid only if its existence is noted conspicuously on the front or back of the certificate, which also did not occur in this case. The plaintiffs point out that provisions mandating to whom, and for what price, a shareholder's stock must be sold or redeemed are "transfer restrictions" subject to the regulatory statute, La.R.S. 12:59. *See Succession of Moss,* 00-62 (La.App. 3 Cir. 6/21/00), 769 So.2d 614, and *Sporl, In re,* 03-1084 (La.App. 4 Cir. 10/1/03), 859 So.2d 732. It is clear that stock redemption restrictions are stock transfer restrictions. *See Moncrief v. Succession of Armstrong,* 05-1584 (La.App. 3

---

[3]La.R.S. 12:59 (B) and (C) provide (emphasis added):

B. A corporation's articles of incorporation or bylaws, an agreement among shareholders or an agreement between shareholders and the corporation, may impose restrictions on the transfer or registration of transfer of shares of the corporation. *A restriction does not affect shares issued before the restriction was adopted unless the holders of the shares are parties to the restriction agreement or voted in favor of the restriction.*

C. A restriction on the transfer or registration of transfer of shares is valid and enforceable against the holder or a transfer of the holder *if the restriction is authorized by this Section and its existence is noted conspicuously on the front or back of the certificate or is contained in the information statement required by R.S. 12:57(H).* Unless so noted, a restriction is not enforceable against a person who has no knowledge of the restriction.

Cir. 9/27/06*), 939 So.2d 714.  Accordingly, Guidroz and Guidry appear to have a sound argument regarding their required participation and the requirement of notations on the certificates.[4]

However, as Gulf Coast points out, the plaintiffs did not answer the appeal, nor did they file an appeal of their own.  Therefore, we are precluded, pursuant to La.Code Civ.P. art. 2133, from entering a ruling on the plaintiffs' assignments of error.

Louisiana Revised Statutes 12:59 has not been interpreted by the courts, and having already determined that the redemption in this case was deficient because of the language and structure of the amendments in arbitrarily equating "book value" with $1.00 per share, we will pretermit a full analysis of La.R.S. 12:59.  Moreover, the trial court's comment regarding the corporation's right to amend its articles and create redemption rights, which we read more narrowly than the plaintiffs do, appeared only in its reasons for judgment.  Those written reasons are not binding or appealable; only the judgment itself has judicial effect and is subject to appeal.  We also note that the trial court itself stated in those same reasons that its ruling was "narrowly tailored to give plaintiffs the right to inspect the books and records of the corporation" in order to determine the book value of their shares.

The trial court's judgment in this case is limited to granting the Writ of Mandamus and ordering inspection of the corporation's books to determine the book

---

[4]The tendency is to sustain restrictions on the transfer of corporate stock *if* the stockholder *acquires* the stock *with the requisite notice of the restriction*.  A statute may *prohibit restrictions* on the transfer of stock issued *before* the corporation adopted the restrictions, *unless the holders of the stock are parties to the agreement or voted in favor of the restriction*.  18A  Am. Jur. 2d Corporations § 570.

"A restriction on transfer of a security imposed by the issuer, even if otherwise lawful, is ineffective against a person without knowledge of the restriction unless:  (1) the security is certificated and the *restriction is noted conspicuously on the security certificate*; or (2) the security is uncertificated and the registered owner has been notified of the restriction."  La.R.S. 10:8-204 (emphasis added).

value of the plaintiffs' shares, and to granting the plaintiffs' request for attorney fees and costs for the corporation's bad faith denial of the shareholder's right to inspect. Accordingly, it is the judgment issued by the trial court, and the judgment alone, which is on appeal today.

Lastly, Gulf Coast argues that the trial court erred in awarding attorney fees because Guidroz and Guidry did not submit their attorney's bills during trial. Instead, the bills were attached to the plaintiffs' brief, which is in the record. Gulf Coast contends that, under *Denoux v. Vessel Management Services, Inc.,* 07-2143 (La. 5/21/08), 983 So.2d 84, evidence attached to a brief, while it is "in the record," cannot be considered on appeal if it is not introduced at trial. We point out that, under the technical and mechanical application of *Denoux*, there would be no usable exhibits in this case because Gulf Coast did not introduce its twenty-nine exhibits at trial either. Rather, at the end of trial, Gulf Coast *referenced* to the court that it had exhibits, and it even offered to attach them to its brief; but the court, working somewhat blind at trial because no briefs were properly delivered before trial, merely told Gulf Coast to see its law clerk. Therefore, all briefs and exhibits were viewed by the court after the conclusion of the trial.

In any event, individual bills are not always necessary to support an entitlement to attorney fees. More specifically, the courts award attorney fees under Rule 1.5 of the Rules of Professional Conduct, and the time spent, or actual hours recorded, is only one of eight factors to be considered in fixing fees. The trial court in this case had the record before him and could readily see the work done on the case. We have held that, even where the record does not have bills to support the specific amount of the attorney fees, "when it is evident from the record what services the attorney provided, proof of those services is not necessary." *Vander v. Safeway*

*Ins. Co. of LA.*, 08-888 p. 9 (La.App. 3 Cir. 2/25/09), 5 So.3d 968, 974. *See also*, *Arnold v. Hancock*, 06-632 (La.App. 3 Cir. 2/7/07), 950 So.2d 911, and *Capdeville v. Winn-Dixie Store No. 1473*, 05-870 (La.App. 3 Cir. 3/1/06), 923 So.2d 900.

IV.

## CONCLUSION

Based upon the foregoing, we affirm the trial court's judgment granting a Writ of Mandamus for inspection of the records of Gulf Coast by Carl Guidroz and David Guidry. We also affirm the trial court's award of attorney fees and costs in the amount of $13,417.72. All costs of this appeal are assessed against the appellant, Gulf Coast Coil Tubing & Nitrogen Services, Inc.

**AFFIRMED.**

15